THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JASPER MOORE, Defendant-Appellee.

Second District    No. 2—01—1347

Opinion filed July 11, 2003.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, and Nancy J. Wolfe and Thomas McGrath O'Connor, Assistant State's Attorneys, of counsel), for the People.

Arthur D. Sutton, of Chicago, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

At approximately 9 p.m. on February 6, 2001, the defendant, Jasper Moore, was stopped for improper lane usage by Officer Cornell Owens of the Woodridge police department. Traveling with the defendant were four passengers, including a female whose parents owned the car. A search of the car revealed a handgun, later identified as belonging to the defendant. The defendant was arrested and charged with aggravated unlawful use of weapons (720 ILCS 5/24— 1.6(a)(1), (a)(3)(c) (West 2000)). The defendant moved to quash the arrest and suppress the evidence derived from it, generally alleging that the stop, search, and arrest violated the federal and state constitutions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The motion was granted and the State appealed. We reverse and remand.

Officer Owens was the sole witness at the suppression hearing and testified to the circumstances of the stop. He initially pulled the defendant over because the defendant was driving south in a northbound lane at a high speed and was passing other vehicles. At the time of the stop, the defendant's speech was nervous, and he appeared to be shaking. He did not have his driver's license or any other form of identification with him, but he gave Officer Owens his name and birth date. Officer Owens returned to the squad car to check the defendant's driver's license status. While waiting, he saw "some motions going on in the front car, like they were trying to hide something in the car basically." These motions were not noted in his police report.

Officer Owens testified that he felt uneasy about the number of people inside the car and that he was not sure if anyone had any weapons or drugs. After determining that the defendant had a valid driver's license, Officer Owens returned to the car and asked the defendant to step out of the vehicle. Based on the defendant's nervous behavior and the motions inside the car indicating that the occupants were trying to hide something, Officer Owens conducted a pat-down search of the defendant, in which the officer discovered nothing. Officer Owens asked if any contraband was present in the car, to which the defendant replied that he was not aware of any. Officer Owens then sought permission to search the car, which he received from the female passenger. The female explained that the car was her parents' but that she had permission to use it.

Due to the number of people in the car, Officer Owens's partner called for backup shortly after the initial stop of the vehicle. Officer Owens was not sure when the backup units actually reached the scene. However, by the time he and his partner searched the vehicle, three or four other units had arrived. Officer Owens's partner found a handgun

under the front passenger seat of the car. Later at the police station, Officer Owens wrote the defendant a citation for improper lane usage.

The trial court granted the defendant's motion to suppress the evidence. The trial court explained that the case boiled down to whether Officer Owens's explanation of furtive movements in the vehicle was a sufficient basis to justify detention of the vehicle. The trial court determined that it was not. However, the trial court did not find Officer Owens's testimony to be incredible; rather, the trial court found that his observation of furtive movements was not explained with enough specificity since he could not articulate the specific movements inside the vehicle or who was moving. The trial court emphasized that Officer Owens simply testified that he saw some type of movement. Additionally, the trial court noted that Officer Owens did not include an explanation of the furtive movements in his police report. The trial court therefore determined that based on *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999), Officer Owens should have written the citation and completed the stop, at the latest, after the patdown search. Thereafter, Officer Owens should have informed the defendant that the purpose of the stop was complete before asking for permission to search the vehicle.

The State now challenges the trial court's basis for granting the motion, arguing that neither *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999), nor the federal or state constitution mandates the suppression order. The defendant has not filed an appellate brief, but this appeal is amenable to decision on the merits under the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

■ In reviewing the trial court's decision regarding a motion to suppress, we accord great deference to the trial court's factual findings and credibility assessments and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). However, we review *de novo* the ultimate finding with respect to probable cause or reasonable suspicion. *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996); *Sorenson*, 196 Ill. 2d at 431. In the present case, the facts are undisputed and Officer Owens was the only testifying witness. The trial court did not find Officer Owens's testimony to be incredible. We will, therefore, review *de novo* the trial court's legal determination as to reasonable suspicion.

■ Because a vehicle stop constitutes a seizure of the vehicle's occupants, a vehicle stop is subject to the fourth amendment's requirement of reasonableness. *People v. Gonzalez*, 204 Ill. 2d 220, 226-27 (2003). In determining the reasonableness of a traffic stop, courts are

guided by the supreme court's observation that the usual traffic stop is more analogous to a *Terry* investigative stop (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest. *Gonzalez*, 204 Ill. 2d at 226. Therefore, as a general rule, a fourth amendment challenge to the reasonableness of a traffic stop is analyzed under *Terry* principles. *Gonzalez*, 204 Ill. 2d at 226.

■ Under *Terry*, a law enforcement officer may, within the strictures of the fourth amendment, conduct a brief, investigative stop of individuals, absent probable cause to arrest, provided the officer has a reasonable, articulable suspicion of criminal activity. *Gonzalez*, 204 Ill. 2d at 227. *Terry* recognized that officers can detain individuals to resolve ambiguities in their conduct, and thus accepts the risk that officers may stop innocent people. *Illinois v. Wardlow*, 528 U.S. 119, 126, 145 L. Ed. 2d 570, 577, 120 S. Ct. 673, 677 (2000). If a detention exceeds what is permissible as a *Terry* investigative stop, a subsequent consent to search may be found to be tainted by the illegality. *Brownlee*, 186 Ill. 2d at 519.

A *Terry* analysis includes a dual inquiry: (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *Gonzalez*, 204 Ill. 2d at 228. In determining whether police questioning during the course of a traffic stop satisfies the second inquiry, we must first determine whether it is related to the initial purpose of the stop. If so, no fourth amendment violation occurs. *Gonzalez*, 204 Ill. 2d at 235. If the questioning is not reasonably related to the purpose of the stop, we must next consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the questioning. *Gonzalez*, 204 Ill. 2d at 235. If the questioning is justified, no fourth amendment violation occurs. *Gonzalez*, 204 Ill. 2d at 235. Finally, in the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the questioning impermissibly prolonged the detention or changed the fundamental nature of the stop. *Gonzalez*, 204 Ill. 2d at 235. Since we rely on *Gonzalez* in determining whether the police questioning satisfied the second prong of *Terry*, we find it important to note that *Gonzalez* was handed down while this case was pending. As such, neither the trial court, in making its decision, nor the parties, when preparing their briefs for this case, had the benefit of its holding.

In this case, the trial court, relying on *Brownlee*, ruled that Officer Owens's search exceeded the strictures of *Terry*. In *Brownlee*, the police stopped a car for failure to signal a lane change as it left an area

known for its crack houses. After checking the identification of the driver and passengers, the officer involved determined that no warrants were outstanding for any of them. The officer then returned the driver's insurance card and license and told him no citations would be issued. Both officers present then paused outside the vehicle for a "couple of minutes" and then asked the driver for permission to search the car. *Brownlee*, 186 Ill. 2d at 506. The driver consented, and the search revealed marijuana. *Brownlee*, 186 Ill. 2d at 506-07. The court held that the detention of the driver after the traffic violation was cleared, without any showing of reason for the further detention, was improper. *Brownlee*, 186 Ill. 2d at 521.

■ Turning to the case at bar, we hold that the trial court's reliance on *Brownlee* in suppressing the evidence recovered from the defendant was improper. Here, unlike the officer in *Brownlee*, Officer Owens had not completed issuing a citation to the defendant before he asked to search the vehicle. Moreover, unlike the situation in *Brownlee*, the record herein reveals that the officer's questioning of the defendant about contraband and asking for permission to search added little to the length of the stop. As such, *Brownlee* is inapposite to the case at bar.

■ Although the trial court's reliance on *Brownlee* was improper, we must next consider whether its suppression of the evidence recovered from the defendant was ultimately correct. As a preliminary matter, the initial stop of the car in which the defendant was riding was permissible based on the officer's observation of the traffic violations and therefore satisfies the first prong of the *Terry* analysis. See *People v. Gonzalez*, 184 Ill. 2d 402, 413 (1998). We must next determine whether questioning the defendant about contraband and asking for permission to search satisfies the second prong of the *Terry* analysis. As recently explained by the Illinois Supreme Court in *People v. Gonzalez*, 204 Ill. 2d 220 (2003), the second prong of *Terry* is satisfied if (1) the questioning and search were reasonably related in scope to the circumstances that justified the interference in the first place; (2) the officer had a reasonable, articulable suspicion that criminal activity was taking place; or (3) the questioning and search did not impermissibly prolong the detention or change the fundamental nature of the stop. See *Gonzalez*, 204 Ill. 2d at 235. Although we need only meet one of these three criteria to satisfy the second prong of *Terry*, we believe all three have been met.

■ In the present case, we believe questioning the defendant about contraband and asking for permission to search the vehicle were both reasonably related in scope to the circumstances that justified the interference in the first place. Officer Owens stopped the defendant

for driving down the wrong side of the road at a high rate of speed at 9 p.m. Once the defendant was pulled over, Officer Owens testified that the defendant was "nervous and shaking." Specifically, Officer Owens testified that he "could tell there was something not right just by the way [the defendant] was shaking and the way his voice sounded." Additionally, the defendant did not have any identification or a driver's license. Officer Owens testified that he felt uneasy about the number of people inside the car and he was not sure if anyone had any weapons or drugs. Given these circumstances, it was reasonable for Officer Owens to suspect that the defendant may have been under the influence of a controlled substance and/or alcohol, or that other criminal activity may have been in progress. As such, we believe that Officer Owens's conduct was reasonable under the circumstances known to him at the time of the stop. See *United States v. Sokolow*, 490 U.S. 1, 8, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989) (in evaluating the validity of an investigative stop, the court must consider the " 'totality of the circumstances—the whole picture.' [Citation.]"); *People v. White*, 331 Ill. App. 3d 22, 27 (2002) (the ultimate test of the constitutionality of a search is reasonableness, and the inquiry concerns whether the officer's conduct was reasonable under the circumstances known to the officer at the time of the stop). Consequently, we believe the scope of the stop was related to the circumstances that justified the interference in the first place.

However, even if we were to conclude that the scope of the investigative stop was not related to the initial purpose of the stop, we believe that Officer Owens's questioning and search were justified based on a reasonable, articulable suspicion. We disagree with the trial court's determination that the furtive movements inside the car were not enough to justify the continued detention and search. In determining whether an officer's suspicion was reasonable, the "totality of the circumstances" must be taken into consideration. *United States v. Denney*, 771 F.2d 318, 321 (7th Cir. 1985). Furthermore, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience as a police officer. *Denney*, 771 F.2d at 321. In reviewing the propriety of an officer's conduct, courts cannot reasonably demand scientific certainty from law enforcement officers where none exists. *Wardlow*, 528 U.S. at 124-25, 145 L. Ed. 2d at 576-77, 120 S. Ct. at 676. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. *Wardlow*, 528 U.S. at 125, 145 L. Ed. 2d at 577, 120 S. Ct. at 676.

In the present case, Officer Owens testified that he had been a

police officer for over 9½ years and wrote up to five or six traffic citations per day. He testified that when he initially approached the vehicle the defendant was nervous and shaking. Nervous behavior is a pertinent factor in determining reasonable suspicion. See *Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676; *United States v. Maher*, 145 F.3d 907, 909 (7th Cir. 1998) (nervous behavior was one of the specific and articulable facts that rendered the *Terry* stop reasonable); *United States v. Black*, 675 F.2d 129, 137 (7th Cir. 1982) (the defendant's behavior, *i.e.*, "shaking, visibly shaking, and acting very nervous," was a critical factor in determining that the *Terry* stop was reasonable).

Furthermore, Officer Owens testified that when he returned to his vehicle to check the status of the defendant's driver's license, he observed furtive movements in the vehicle as if the occupants were trying to hide something. Officer Owens described these movements as coming from the front seat to the backseat. Officer Owens's testimony that there were motions from the front to the back implies that either the defendant or the front passenger was moving something from the front seat to the backseat in an attempt to hide it. The fact that Officer Owens did not describe the movements with more specificity was of no consequence. Similar situations and explanations of furtive movements have been found sufficient to warrant further detention. See *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992) (after signaling a car to pull over for a traffic violation, the officer observed furtive movements between the driver and the passenger; the court held that these are the kind of specific, articulable facts that warrant a search); *People v. Day*, 202 Ill. App. 3d 536, 541 (1990) (considering the time of day, the location of the stop, the number of occupants in the vehicle, and that one of the occupants made a furtive movement that might be interpreted as reaching for a weapon, the officer was justified in frisking the defendant to ensure he was not in danger).

Here, as in *Fryer* and *Day*, we believe that the situation with which Officer Owens was confronted warranted his further detention of the defendant. Based on the defendant's reckless driving, nervous behavior, and lack of identification, and due to the furtive movements described by Officer Owens, the number of passengers in the vehicle, and the time of day, it was not unreasonable for Officer Owens to detain the defendant and search for weapons. See *Denney*, 771 F.2d at 321. Accordingly, we hold that Officer Owens's stop of the defendant was not improper. As such, the trial court erred in granting the defendant's motion to suppress the evidence received from his detention.

In so ruling, we note that Officer Owens's failure to include an explanation of the furtive movements in his police report is inconsequential in this case. See *People v. Allgood*, 242 Ill. App. 3d 1082, 1088 (1993) (although two officers testified to observations not included in their police reports, the officers' statements merely showed that they omitted observations from their reports); *People v. Guidry*, 220 Ill. App. 3d 406, 410 (1991) (although the witness testified to a statement that was not included in the officer's police report, there was nothing in the record to suggest that the report contained a verbatim account of the witness' statement). Additionally, credibility determinations are left to the trier of fact and the trial court did not find Officer Owens's testimony about the furtive movements to be incredible. Rather, the trial court merely found that the furtive movements described by Officer Owens were not specific enough to justify the continued detention and search of the vehicle. See *People v. Weathers*, 18 Ill. App. 3d 338, 343 (1974) (police officers' testimony about information not included in their reports did not discredit their testimony but rather merely raised a question of credibility for the trier of fact). As such, we hold that Officer Owens's testimony of the furtive movements was sufficient to justify the continued detention and search.

Finally, we believe that, even if Officer Owens did not have a reasonable suspicion for prolonging the stop or absent there being a reasonable connection to the initial purpose of the stop, Officer Owens's questioning did not impermissibly prolong the detention or change the fundamental nature of the stop. The record reveals that Officer Owens's questioning of the defendant about contraband and his asking for permission to search added little to the length of the stop. After he checked the defendant's driver's license, but before issuing a citation, Officer Owens returned to the vehicle. Based on reasonable suspicion, he asked the defendant to step to the rear of the vehicle, where he conducted a pat-down search of the defendant. Officer Owens conversed with the defendant for only 30 seconds before asking for and receiving consent to search the vehicle. Officer Owens's partner thereafter discovered a gun underneath the passenger seat. As such, the detention of the defendant was conducted in an expeditious manner and comported with the defendant's fourth amendment rights. See *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention). Moreover, Officer Owens's questions did not impermissibly change the fundamental nature of the stop. Once again, the defendant was stopped for reckless driving, did not have any identification, and was nervous and shaking. Furthermore, the stop occurred at night,

there were four passengers in the vehicle, and Officer Owens observed furtive movements. In light of these circumstances and common sense, the questions concerning contraband and/or weapons were warranted and did not increase the confrontational nature of the encounter.

For the reasons stated, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

CALLUM and KAPALA, JJ., concur.