THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. McKINLEY L. DAVIS, Defendant-Appellee.

Second District No. 2—03—0603

Opinion filed August 27, 2004.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Defendant, McKinley L. Davis, was seen riding his bicycle at nighttime without a light (see 625 ILCS 5/11—1507(a) (West 2002)). Two officers in the area advised defendant of this violation, and, while talking with defendant, one of the officers observed defendant acting nervously and attempting to put his hand in his pocket. That officer frisked defendant, detecting a box cutter in defendant's pocket. When the officer removed the box cutter from defendant's pocket, a baggie of cocaine was discovered. Defendant subsequently was indicted for unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2002)). He moved to quash his arrest and suppress the evidence seized, contending that the frisk was improper because the officers lacked reasonable grounds to believe that he was armed and dangerous. The trial court granted the motion. Following the denial of a motion to reconsider, the State filed a timely notice of appeal (see 188 Ill. 2d R. 604(a)(1)) and a certificate of impairment. We affirm.

At the suppression hearing, defendant testified that he was riding his bike to a convenience store in Elgin at approximately 12:41 a.m. on August 7, 2002. Defendant acknowledged that it was dark outside, and he admitted that he did not have a light on his bike. When he arrived at the store, he bought a soda and cigarettes. Defendant then stood in front of the store, which was well-lit, smoking a cigarette and drinking his soda. Soon afterwards, a marked squad car pulled in front of the store. One of the officers in the car called out to defendant, asking him to "come here." Defendant walked over to the squad car, carrying his lit cigarette and soda.

The officers told defendant that he could not ride his bike at nighttime without a light. Defendant told the officers that he would not do so and that he would walk instead. The officers asked defendant for his name and told him that a computer check revealed that a parole warrant was issued against him. Defendant advised the officers that there was no such warrant, and he asked the officers to contact his parole officer for verification. The officers told defendant that they could resolve the matter at the police station. Defendant denied looking around or attempting to put his hand in his pocket while he talked with the officers, noting that he was carrying his cigarette in one hand and his soda in the other hand.

After the officers informed defendant about the parole warrant, they asked him to turn around. Defendant let go of the cigarette and soda he was carrying, and the officers handcuffed him. The officers

then searched his pockets and found cocaine. Defendant testified that the cocaine was in his front pocket, and, in his back pocket, he was carrying a box cutter, which was admitted into evidence.

Officer Sheehan, one of the two officers who arrested defendant, testified that he had been a police officer for almost five years. Based on his experience as an Elgin police officer, Officer Sheehan believed that the area around the convenience store was a "high crime area," noting that many drug transactions took place there. Officer Sheehan specified that he had made drug arrests at that location on three or four occasions.

While Officer Sheehan and his partner, Officer Trost, were parked in the convenience store parking lot, they saw defendant ride his bike in front of their squad car. Officer Sheehan asked defendant to come speak with them, and defendant complied. Defendant was not carrying anything in his hands at that time.

The officers, who intended to issue defendant a traffic ticket for riding his bike without a light, asked defendant for his identification, which he did not produce. The officers proceeded to ask defendant various questions, such as his name and where he was going. Although the officers did not tell defendant that a parole warrant was issued against him, "[o]ne of [them] mentioned something about a possible *** [National Crime Information Center (NCIC)] hit."

During this questioning, defendant appeared nervous. Specifically, defendant was fidgeting, looking around, and "frantically" attempting to "dive" into his right-front pocket. When defendant's fingers were inside of his pocket, the officers asked to see his hands. Although defendant initially complied with the officers' orders, he soon attempted to reach back into his pocket.

Fearing for their safety, the officers, who were still seated in the squad car, exited their vehicle and handcuffed defendant. Officer Sheehan testified that, after he handcuffed defendant, he patted down defendant's right-front pocket. While patting down defendant with the palm of his hand, Officer Sheehan felt something he thought was a box cutter. When Officer Sheehan pulled the box cutter out of defendant's pocket, a clear baggie containing cocaine was simultaneously discovered.

Andre York, defendant's friend, testified that he saw defendant riding his bike to the convenience store. As defendant rode past York, York told defendant that he thought the police were watching him. When defendant went into the convenience store, York saw the squad car drive around the corner without its lights on and pull in front of the store. After defendant exited the store, York heard the officers say something to defendant and saw defendant walk up to the squad car.

The trial court granted defendant's motion to quash his arrest and suppress the evidence seized. In reaching this conclusion, the trial court addressed the inevitable discovery rule, the "plain touch" doctrine, and whether the evidence supported a reasonable inference that defendant was armed and dangerous. In addressing the inevitable discovery rule, the trial court found that the cocaine would not have been inevitably discovered because no evidence suggested that an independent investigation was underway that would have led to the cocaine's discovery.

Likewise, the trial court did not believe that the cocaine would have been found pursuant to the "plain touch" doctrine. The trial court noted that, through a proper frisk, it would not have been immediately apparent that the item in defendant's pocket was a box cutter.

Lastly, the trial court evaluated whether Officer Sheehan had reason to believe that defendant was armed and dangerous. The trial court observed that riding a bike without a light was a proper basis to stop defendant, noting that Officer Sheehan had no intention to arrest defendant or take him into custody for that offense. However, even though the stop was proper, the trial court did not believe that the officers were justified in patting down defendant for weapons once he was stopped. Although the offense occurred at night, which may have warranted a pat-down search, the trial court believed that the other evidence did not create a reasonable belief that defendant was armed and dangerous. Specifically, the trial court found that nervousness, alone, is not a basis to conduct a pat-down search, that there was no evidence that defendant had a "dangerous history," and that two officers confronted defendant. The trial court also did not believe that the area was a "high crime area," noting that only three or four drug arrests were made at that location.

The State moved to reconsider, and the trial court denied the motion. This timely appeal followed.

■ Before addressing the merits, we first consider our standard of review. When reviewing a ruling on a motion to quash an arrest and suppress the evidence seized, our standard of review is usually twofold. We accord great deference to the trial court's factual findings and credibility determinations and reverse those conclusions only if they are against the manifest weight of the evidence. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003); *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *People v. Rockey*, 322 Ill. App. 3d 832, 836 (2001). After reviewing the trial court's factual findings, we review *de novo* the trial court's ultimate legal ruling. *Sorenson*, 196 Ill. 2d at 431.

■ Here, the trial court made two factual findings that are relevant to the resolution of this appeal. First, the trial court found that the area around the convenience store was not a high crime area, noting that Officer Sheehan made only three or four arrests in that area in his five years as a police officer. Second, the trial court found that Officer Sheehan had no intention to arrest defendant for the minor traffic violation. After reviewing the record, we conclude that neither of these findings is against the manifest weight of the evidence. We now review *de novo* whether the frisk was justified.

■ A warrantless search is *per se* unreasonable unless it falls within a specific exception to the warrant requirement. *People v. Stehman*, 203 Ill. 2d 26, 34 (2002). One such exception is a frisk pursuant to *Terry v. Ohio*, 392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884-85 (1968), which was codified by section 108—1.01 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108—1.01 (West 2002)). In order for a frisk to be constitutionally reasonable, (1) the stop must be proper, (2) the officer must have reason to know that the defendant is armed and dangerous, and (3) the scope of the search must be strictly limited to a search for weapons. 725 ILCS 5/108—1.01 (West 2002); *Sorenson*, 196 Ill. 2d at 432-33, 439-40; *People v. Blake*, 268 Ill. App. 3d 737, 739 (1995).

■ Defendant does not challenge the stop in this case. The officers observed defendant commit a minor traffic offense, which, in itself, provided a valid basis to stop defendant. See *Sorenson*, 196 Ill. 2d at 433. However, the right to frisk defendant did not automatically follow from the fact that the stop was proper. *People v. Flowers*, 179 Ill. 2d 257, 263 (1997). Rather, as noted, the officer must reasonably believe that the defendant is armed and dangerous. *Sorenson*, 196 Ill. 2d at 433. This reasonable belief is met if a reasonably prudent person, when faced with the circumstances that the police confronted, would have believed that his safety or the safety of others was in danger. *Sorenson*, 196 Ill. 2d at 433.

The State claims that the frisk was justified because of the unusual circumstances under which the officers observed defendant. Specifically, the State notes that defendant was seen riding his bike at nighttime, that he had no light on his bike, that he was nervous, and that he attempted to put his hand in his pocket after the police asked him not to do so. We cannot conclude that these facts justified frisking defendant.

The fact that defendant committed such a minor offense cannot serve to justify the frisk. In *People v. Galvin*, 127 Ill. 2d 153, 173 (1989), our supreme court refused to adopt a rule that officers could frisk suspects of much more serious crimes, particularly burglaries,

based solely on the notion that burglary suspects are usually armed and dangerous. Rather than adopt a *per se* rule for frisks in burglary cases, the court stressed that the reasonableness of the frisk in each case must stand or fall based on the case's particular facts. *Galvin*, 127 Ill. 2d at 174. Here, seeing defendant riding his bike at nighttime without a light did not create a reasonable belief that defendant was armed and dangerous. Defendant was not seen in a high crime area, at a location where many drug transactions take place, or riding his bicycle aimlessly. To the contrary, defendant was observed riding to an open convenience store where, according to defendant, he purchased a few items.

Further, defendant's nervousness did not create a reasonable belief that he was armed and dangerous. Although nervous behavior can be a pertinent factor in determining reasonable suspicion (*People v. Moore*, 341 Ill. App. 3d 804, 811 (2003)), nervousness alone does not justify a frisk (*People v. Kramer*, 208 Ill. App. 3d 818, 821 (1991)). Here, the evidence revealed that defendant became nervous when the police began asking him questions that had nothing to do with the offense he committed. Specifically, Officer Sheehan testified that he asked defendant where he was going not because it was germane to defendant's detention but because "[i]t's just something we usually ask when we speak to people, what they're up to, where they're going." At the time, defendant was alone and talking with two police officers who mentioned that his name appeared on an NCIC list. Given these facts and the fact that it is not unusual for people to become nervous when police officers approach them (see *People v. Thompson*, 337 Ill. App. 3d 849, 855 (2003)), we cannot conclude that the frisk was proper.

Lastly, the fact that defendant attempted to put his hand in his pocket cannot justify the search. In reaching this conclusion, we find instructive *People v. Dotson*, 37 Ill. App. 3d 176 (1976). In *Dotson*, the defendant was stopped for negligent driving and failing to display a city sticker. *Dotson*, 37 Ill. App. 3d at 177. While the officer examined the defendant's driver's license, the defendant kept putting his hand in his pocket, took several steps back from the officer, and shifted his weight on his feet. The officer then frisked the defendant and found a concealed weapon. The trial court granted the defendant's motion to suppress the weapon, and the appellate court affirmed, finding that the officer's observations did not amount to a proper basis to frisk the defendant. *Dotson*, 37 Ill. App. 3d at 177. In reaching this conclusion, the appellate court specifically noted that the defendant could have put his hand in his pocket for an innocuous reason, such as attempting to keep warm. *Dotson*, 37 Ill. App. 3d at 177.

As in *Dotson*, defendant could have put his hand in his pocket for many nonthreatening reasons. Defendant could have been attempting to keep warm, give the officers his parole officer's phone number, or locate the identification for which the officers asked. Thus, as in *Dotson*, we cannot conclude that defendant's attempt to put his hand in his pocket justified frisking defendant.

Even when we consider all of the facts available to Officer Sheehan collectively, we cannot conclude that the frisk was proper. The fact that defendant was stopped for a minor traffic offense, coupled with his behavior during the stop, simply does not create a reasonable belief that defendant was armed and dangerous. Thus, we hold that the trial court did not err when it granted defendant's motion to quash his arrest and suppress the evidence seized.

The State claims that this case is similar to *In re M.N.*, 268 Ill. App. 3d 893 (1994). We disagree. In *M.N.*, two officers were patrolling an area near a high school, looking for truants and gang activity. *M.N.*, 268 Ill. App. 3d at 894. The officers saw the defendant and four other teenagers standing outside the high school. They stopped their squad car, approached the group, and spoke to the defendant. One of the officers asked the defendant for identification, which he could not produce. The officer then asked the defendant whether he should be in school, and the defendant responded evasively. The officer patted down the defendant for weapons and found a vial containing several packets of cocaine.

The defendant moved to quash his arrest and suppress the evidence seized, and the trial court denied the motion. *M.N.*, 268 Ill. App. 3d at 894-95. The appellate court affirmed, concluding that the defendant's suspicious behavior and concurrent actions gave the officer a reason to believe that a frisk was proper. *M.N.*, 268 Ill. App. 3d at 895-96. In reaching this conclusion, the appellate court specifically noted the fact that the defendant could not produce identification and gave a vague answer when asked whether he should be in school. *M.N.*, 268 Ill. App. 3d at 896-97.

There are many factual reasons why we find *M.N.* inapplicable to this case. In *M.N.*, the officers were assigned to monitor gang activity in the area. In the present case, there was no evidence that the area around the convenience store was a "high crime area" or notorious for any type of criminal activity. Moreover, in *M.N.*, the defendant did not comply with the officer's requests, which is unlike the evidence presented in this case. Here, defendant immediately approached the officers when they asked to speak with him, and he answered the questions they posed. Although, like in *M.N.*, defendant could not produce identification, he did give the officers his name, which did not

happen in *M.N.* In *M.N.*, the defendant became evasive when the police officer questioned him about the basis for the stop, *i.e.*, whether he was truant. Here, when the officers spoke with defendant about the reasons for stopping him, *i.e.*, riding his bike at nighttime without a light, defendant assured the officers that he would no longer violate that law, opting to walk instead. Lastly, in *M.N.*, two officers confronted five teenagers. Here, defendant was alone in the well-lit parking lot of an open convenience store when Officers Sheehan and Trost called out to him from their squad car. Given these differences, we cannot conclude that *M.N.* is persuasive.

Because we determine that Officer Sheehan had no reason to believe that defendant was armed and dangerous, we need not address whether the officer exceeded the scope of a *Terry* frisk when he found the cocaine. Moreover, we will not consider whether the trial court erred when it found the seizure of the cocaine improper pursuant to the "plain touch" doctrine or when it substituted its judgment for that of Officer Sheehan's in deciding that the box cutter was not readily identifiable as a weapon.

However, as a final matter, we address the arguments the State raises in the alternative. The State claims that, even if the frisk was improper, the cocaine should not be suppressed because it would have been inevitably discovered or found during a search incident to defendant's arrest. Neither of these theories is convincing.

First, we believe that the cocaine would not have been inevitably discovered. As the trial court noted, no evidence even suggested that an independent investigation was underway that would have uncovered the cocaine. See *People v. Alvarado*, 268 Ill. App. 3d 459, 470 (1994) (delineating test for inevitable discovery rule as requiring that "(1) the condition of the evidence when actually found by lawful means would have been the same as that when improperly obtained; (2) the evidence would have been discovered through an independent line of investigation untainted by the illegal conduct; and (3) the independent investigation was already in progress at the time the evidence was unconstitutionally obtained").

Second, we cannot conclude that the cocaine would have been found during a search following defendant's arrest. Although defendant claimed that the officers advised him about an outstanding parole warrant, Officer Sheehan stressed that no valid warrant existed. The evidence revealed that Officer Sheehan did not intend to take defendant into custody or place him under arrest for the minor traffic violation. Rather, issuing defendant a citation was the officer's only intention when he began asking defendant questions that went beyond the scope of the stop, noticed defendant's nervousness, and frisked

584

defendant. Because a citation for a minor traffic offense is not a custodial arrest, we find that the State's argument is baseless. See *People v. Gilbert*, 347 Ill. App. 3d 1034, 1039-40 (2004) (noting that search following citation for minor traffic offense is not a search incident to an arrest, especially when neither the officer nor the defendant believed that the defendant was arrested).

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.