# Illinois Official Reports

## Appellate Court

---

### *People v. Fox*, 2014 IL App (2d) 130320

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EVAN A. FOX, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0320 |
| Filed | May 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's burglary conviction and sentence were vacated, the denial of his motion to suppress evidence in an improper search was vacated and the cause was remanded for a new trial where the mere fact that defendant and his companion matched the description of the suspects in a recent burglary of a nearby shop did not justify the expansion of the temporary detention of the two to include a search, since *Terry* provides that a search is justified only if the officer has a reasonable belief that the person is armed and presently dangerous to the officer or others, and in defendant's case, although the officer who first encountered defendant and his companion was alone, he had the support of several other officers in a matter of a few seconds, neither defendant nor his companion engaged in any unusual or suspicious behavior, and in the absence of such behavior, the fact that the encounter occurred at night and the officer's subjective opinion were not factors. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CF-1461; the Hon. James C. Hallock, Judge, presiding. |
| Judgment | Judgment vacated; order reversed; cause remanded. |

Counsel on Appeal

Daniel P. Cummings, of Law Offices of Daniel P. Cummings, of Naperville, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Colleen P. Price, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Evan A. Fox, appeals from his convictions of burglary (720 ILCS 5/19-1(a) (West 2010)), retail theft (720 ILCS 5/16A-3(a) (West 2010)), and criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2010)). Following the guilty finding, defendant was sentenced to probation for 48 months. He asserts that the trial court erred in admitting evidence obtained from an improper search. Because no articulable facts existed at the time of the stop to support the belief that defendant was then armed and dangerous, we hold that the search violated defendant's constitutional rights and that the evidence should not have been admitted. Therefore, we reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    Early in the morning of July 9, 2011, at approximately 1 a.m., Carpentersville police dispatch alerted officers on patrol about a reported burglary in progress at Buddeez, a local smoke shop. The dispatch also contained a description of two suspects believed to be responsible. Absent from the description was any mention of weapons or other information that would suggest that the suspects were armed and dangerous.

¶ 4    After receiving the dispatch, Officer Scott Blahnik cruised into a residential neighborhood, where, only a block away from the shop, he observed two individuals matching the descriptions of the suspects. Officer Blahnik radioed a nearby officer, Officer Giacomo Accomando, to alert him to the match and to suggest stopping to question them.

¶ 5    Officer Accomando made contact with the suspects while Officer Blahnik turned his vehicle around. Officer Accomando ordered them to stop and both suspects quickly complied with his order. Officer Accomando ordered both suspects to place their hands on his vehicle, and both suspects complied. During this time, Officers Blahnik, Ramos, and Crowe arrived on the scene, within 30 seconds of Officer Accomando.

¶ 6    As Officer Accomando was preparing to frisk the first suspect, he also directed Officer Crowe to frisk defendant. Before patting him down, Officer Crowe asked defendant if he was

carrying any weapons or dangerous items. Defendant said that he was not. Officer Crowe then frisked defendant. Defendant did not expressly consent to the search, but he did acquiesce to it.

¶ 7    Officer Crowe testified that, as he was conducting the frisk, he saw bulging from defendant's pocket, purportedly in plain sight, what he believed to be marijuana in a clear plastic jar. Upon removing the jar, Officer Crowe noticed other items, which appeared to belong to the shop. Defendant was then placed under arrest.

¶ 8    Defendant filed a pretrial motion to quash his arrest and suppress the evidence, on the ground that the search was unreasonable. The trial court denied the motion, holding that defendant had not made a sufficient showing that the stop or the search was improper. Specifically, the trial court held that "it was reasonable for [the officers] to believe that the defendant may be armed, reasonable for the officers to conclude there may be weapons on the defendant." The trial court included nothing more specific in its reasoning. At the ensuing bench trial, the shop owner testified that, in the course of the burglary of his shop, a window had been broken, presumably to allow the offenders to enter the shop. Ultimately, defendant was found guilty of burglary. Defendant timely appeals.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, defendant argues that the trial court erred in denying his motion to quash his arrest and suppress the evidence. Defendant contends that a proper analysis of the appropriate factors shows that there could not have been a reasonable belief that he presented a danger to the officers or to others. In addition, defendant contends that, to the extent that the trial court implicitly found that Officer Accomando was outnumbered (which the officer used as a justification for the search), that finding was against the manifest weight of the evidence.

¶ 11    A trial court's ruling on a motion to quash an arrest and suppress evidence presents a mixed question of law and fact, and it requires a bifurcated standard of review. *People v. Lee*, 214 Ill. 2d 476, 483 (2005). Findings of fact made by the trial court are given deference and will not be disturbed unless they are against the manifest weight of the evidence. *Id.* However, the ultimate issue (*i.e.*, the application of the law to the established facts) is subject to *de novo* review. *Id.* at 483-84.

¶ 12    An individual's right to be free from unreasonable searches and seizures derives from both the federal and Illinois constitutions. U.S. Const., amend. IV and XIV; Ill. Const. 1970, art. I, § 6. When an officer has reason to believe that a crime has been, or is about to be, committed, he may temporarily detain an individual to investigate without violating this right. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). During a proper temporary detention, the officer may search the suspect for weapons if there is reasonable and articulable suspicion that the suspect is armed and is presently dangerous to the officer or to other persons. *Sorenson*, 196 Ill. 2d at 432. This holding has been codified into the Code of Criminal Procedure of 1963 (Code) (see 725 ILCS 5/107-14, 108-1.01 (West 2010)).

¶ 13    Thus, even if a temporary detention is justified, that fact alone does not give an officer an automatic right to conduct a search. *People v. Flowers*, 179 Ill. 2d 257, 263 (1997). A search is proper only if the officer reasonably believes that " 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or

to others.' " *Id.* (quoting *Terry*, 392 U.S. at 24). This is an objective standard that is satisfied if, in light of the totality of the circumstances, a reasonably prudent person in that situation would believe that his or her safety or the safety of others is in danger. *People v. Davis*, 352 Ill. App. 3d 576, 580 (2004). Likewise, the sole fact that a person has been properly detained as a suspect in a crime such as burglary does not automatically grant an officer the right to conduct a search. *People v. Galvin*, 127 Ill. 2d 153, 173 (1989). Such an intrusion must be justified by the reasonable belief that the suspect is presently dangerous. *Flowers*, 179 Ill. 2d at 263; *Davis*, 352 Ill. App. 3d at 580. If a search is performed where there is no reasonable belief that the suspect is dangerous, any evidence seized during the search is inadmissible. *People v. Henderson*, 2013 IL 114040, ¶ 33. With these principles in mind, we turn to the facts of this case.

¶ 14     Initially, we note that defendant has conceded that the initial stop was valid. Reviewing the record, we agree that defendant's initial stop was justified. Therefore, we turn to the issue of whether the search of defendant was proper.

¶ 15     As a first step, we address whether Officer Accomando was outnumbered when defendant was frisked. The question of whether officers are outnumbered goes to the determination of officer safety, is an important consideration in the totality of the circumstances, and is measured from the point of the search. See *People v. Moss*, 217 Ill. 2d 511, 530-31 (2005) (another officer arrived before the defendant was searched, but this did not change the fact that, at the time of the search, the officers remained outnumbered by the occupants of the car). Additionally, as noted above, we review a factual finding to determine whether it is against the manifest weight of the evidence. *Lee*, 214 Ill. 2d at 483. During the suppression hearing, the trial court heard testimony about the manner in which the officers responded to the dispatch and investigated the two suspects. To the extent that the trial court made the implicit finding that Officer Accomando was alone when defendant was frisked, it is against the manifest weight of the evidence.

¶ 16     The record shows that Officer Accomando was alone when he first approached the two suspects. While he was securing the scene and preparing to search the first suspect, Officers Crowe, Ramos, and Blahnik arrived on the scene. At the direction of Officer Accomando, Officer Crowe searched defendant. Although the record is not entirely clear on whether Officer Accomando began the search of the first suspect before the other officers arrived, the record shows that the other officers all arrived prior to the search of defendant. Because the record shows that four officers were on the scene prior to the search of defendant, any factual finding that Officer Accomando was outnumbered is against the manifest weight of the evidence. *Id.* Because the officers were not outnumbered, the trial court could not properly rely on this factor to support the search of defendant.

¶ 17     In addition, nothing in the behavior of defendant or the other suspect gave rise to a reasonable suspicion that they were armed and dangerous. At the suppression hearing, Officer Accomando testified that he saw one of the suspects look around, which he believed showed that suspect's intent to flee. Officer Accomando testified that, upon seeing this glance, he "sprinted" to the suspects to prevent flight. Neither suspect undertook any further action that suggested flight. Instead, both suspects promptly complied with all orders and followed Officer Accomando to his vehicle, where they then placed their hands on the hood of his vehicle.

¶ 18    According to Officer Blahnik's testimony, he and the other officers arrived on the scene 20 to 30 seconds after Officer Accomando. Even though the record is unclear on how long it took Officer Accomando to bring the suspects to his vehicle, it is reasonable to infer that confronting the suspects and bringing them to his vehicle consumed the moments before the arrival of the other officers. Once the suspects were positioned with their hands on the hood of his car, Officer Accomando felt comfortable enough to focus on the first suspect and conduct the first search, which suggests that Officer Accomando was not actually in fear that the suspects were presently dangerous. Even if Officer Accomando subjectively believed that one of the suspects was considering flight, the singular glance by that suspect did not justify the search of defendant, especially because both defendant's and the first suspect's subsequent conduct of obeying the officer's orders belied any intention to flee, and the trial court could not reasonably rely on a perceived flight risk to support the search of defendant.

¶ 19    In any event, a risk of flight does not support a search even though it might support a stop. The appropriateness of a stop and a search are separate inquiries. *Galvin*, 127 Ill. 2d at 163. In other words, evidence justifying a stop will not necessarily justify a search. *Id.* The purpose of a search is not to collect evidence, but rather to protect officers from a dangerous situation. *Flowers*, 179 Ill. 2d at 263. Although the State argues that the risk of flight by one of the suspects should be a factor in determining whether the search of defendant was appropriate, it provides no authority to support this assertion. Similarly, our research disclosed no case in which a court considered a suspect's risk of flight as a factor in determining the reasonableness of a search. Viewed logically, the risk of a suspect's flight cannot factor into the inquiry of whether a search was appropriate, because flight would not suggest that the suspect is armed and dangerous. Because a suspect's potential to flee has no connection to the level of danger he or she poses, the risk of flight is irrelevant to the propriety of a protective search.

¶ 20    The State argues that the officers' safety was in danger because the search occurred at night. However, the State, again, fails to cite authority to support the proposition that the time of day is a factor to be considered in determining the propriety of a protective search. In our own research, we uncovered two decisions, not cited by either party, that considered the time of day in determining the propriety of a protective search. In *People v. Day*, 202 Ill. App. 3d 536, 539 (1990), an officer stopped a car, occupied by four young males, for a speeding violation. When the officer approached the vehicle, the defendant exited the vehicle, and the officer observed the other passengers " 'jumping around,' " with the front right-seat passenger leaning over. *Id.* The court held that, in light of the suspicious movements by the defendant and the other passengers, the fact that the stop occurred at night was relevant to the propriety of the search. *Id.* at 541. We note, however, that the officer felt unsafe because of the suspicious movements, the fact that the defendant exited the car unbidden, and the fact that the officer was outnumbered, all of which were objective facts supporting the propriety of the search. *Id.* In *People v. Moore*, 341 Ill. App. 3d 804, 806 (2003), an officer stopped a car because the defendant was driving at a high rate of speed on the wrong side of the road. During the stop, he observed that the defendant was nervous and that the passengers were fumbling around inside the car, as if they were trying to hide something. *Id.* The court determined that, based on the defendant's reckless driving, the defendant's nervous behavior and lack of identification, the passengers' furtive and fumbling movements, the fact that the

officer was outnumbered, and the time of day, the search for weapons was not unreasonable. *Id.* at 811.

¶ 21    In both cases, the time of day was considered to be a factor in the reasonableness of the search, but its relevance was unexplained. In our view, and in light of the paucity of cases considering the time of day, this factor arises only in conjunction with an already potentially dangerous situation, such as where the officer is outnumbered or the suspects are making furtive motions that could be consistent with holding a weapon or another dangerous object. In other words, standing alone, the time of day cannot justify a protective search (because, if it could, then any search undertaken at night would be justified, even if there were no other facts that suggested that the suspect was presently dangerous). Accordingly, we find *Day* and *Moore* to be distinguishable. In this case, neither defendant nor the first suspect made any suspicious movements. There was no information suggesting that they were armed and presently dangerous. Indeed, their compliance with Officer Accomando's orders minimized the danger in the situation. While the time of day might increase the inherent danger in a situation, the time of day, standing alone, does not render a suspect presently dangerous. Here, the State is suggesting that the time of day when the suspects were encountered established the existence of a dangerous situation. However, by doing so, the State is effectively arguing (and, we continue to note, without supporting authority) that anybody who was outside after dark could reasonably be expected to be carrying a weapon. The State's argument sweeps too wide and we reject it. Further, even if the time of day were a factor, it was minor here and overshadowed by defendant's (and the other suspect's) fully compliant conduct.

¶ 22    The State also contends that Officer Accomando's experiences and subjective opinion support the appropriateness of the search. We agree that the officer's experiences and subjective opinion are both relevant; nevertheless, they must be used to demonstrate that a defendant was presently dangerous to the officer or others, based upon specific, articulable facts. *Galvin*, 127 Ill. 2d at 168. Officer Accomando testified that, in his 13 years of experience, burglars tended to carry weapons. Based on the nature of the suspected crime, Officer Accomando concluded that defendant was likely to be carrying a weapon. While the trial court could consider this as a factor, it represented little more than a hunch. If Officer Accomando's experiential inferences could justify the search, then any burglary suspect who is stopped would be subject to a search simply because he or she is a burglary suspect. We cannot accept this reasoning, because our supreme court has expressly rejected this proposed *per se* rule. *Id.* at 173. While an officer's experiences and subjective opinion may be considered, they must be tied to some other, specific circumstance that justifies a reasonable, articulable suspicion of danger. See generally *Galvin*, 127 Ill. 2d 153.

¶ 23    The Seventh Circuit Court of Appeals faced a similar issue in a case not cited by the State. In *United States v. Snow*, 656 F.3d 498 (7th Cir. 2011), the court held that, when an officer reasonably suspects that a person has committed a burglary, a search is justified without additional information suggesting that the suspect is armed and dangerous. Simply put, under *Snow*, a search may be conducted during a proper *Terry* stop whenever a suspect is believed to have committed a burglary. See *id.* at 501. Further, "a suspect's 'cordiality' and 'cooperativeness' upon being stopped for questioning do not undermine the possibility that he might be armed." *Id.* We decline to adopt this holding, as it is inconsistent with Illinois law. See *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001)

(decisions of the lower federal courts are not binding on Illinois courts, though they may be persuasive authority). Indeed, our supreme court passed on this precise issue in *Galvin*, 127 Ill. 2d at 173, and it declined to accept or promote the Seventh Circuit's *per se* rule.

¶ 24     Although the stop was proper in this instance, it is a well-established point of law that a stop must cease once the reason for the stop has been settled. See *People v. Cosby*, 231 Ill. 2d 262, 302 (2008) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion), and *People v. Gherna*, 203 Ill. 2d 165, 181-82 (2003)). Had the officers questioned defendant about the burglary immediately after stopping him, their inquiry might have revealed objective facts indicating that defendant was armed and dangerous, thus providing grounds for a search. However, if the questioning alleviated the basis for the stop, the officers would have been obligated to immediately release defendant. See generally *Cosby*, 231 Ill. 2d 262.

¶ 25     A suspect may be properly searched only when there is a reasonable suspicion that he or she is presently dangerous to the officer or to others. *Flowers*, 179 Ill. 2d at 263. This rule presents an objective test that can be fulfilled only by specific, articulable circumstances. *Davis*, 352 Ill. App. 3d at 580. Despite the objectiveness of the test, the officer's subjective beliefs and experiences may be taken into account. Here, Officer Accomando believed that, because defendant was a burglary suspect, he was properly subject to a search, because burglary suspects are sometimes armed. Officer Accomando also pointed to the facts that he was by himself when he encountered and stopped both suspects, that the first suspect glanced about as if he would flee, and that it was at night. In other words, Officer Accomando could point to no facts that suggested that defendant was armed and presently dangerous. Looking at these facts, we note that, while the risk of flight might further justify the initial stop, it does not justify the search, since no relationship exists between flight and the possibility of being armed. The time of day might offer support for a search in that it can serve to enhance the danger of a situation, but it alone does not establish the situation as dangerous. See generally *Moore*, 341 Ill. App. 3d 804; *Day*, 202 Ill. App. 3d 536. Acceding to the State's argument that the search was proper because of the type of crime and the time of the stop would be to effectively adopt a rule allowing the automatic search of any burglary suspect so long as the encounter occurs at night. This type of *per se* rule has been previously rejected. See *Galvin*, 127 Ill. 2d at 173. Similarly, even viewing the circumstances in light of Officer Accomando's prior experiences, the only objective facts present are that the suspected offense was a burglary and that the stop occurred at night. Although the trial revealed that there was a broken window at the shop, the officers had no specific information to suggest that the window was broken by a weapon carried by a suspect. In the absence of specific information suggesting that defendant was dangerous at the time of the stop, we cannot conclude that the search was reasonable.

¶ 26     Accordingly, in light of the totality of the circumstances, we conclude that the search was improper and that the evidence from the search should not have been admitted at trial.

¶ 27     Having held that defendant was improperly searched, we now turn to what relief should be granted. Defendant requests only that we reverse the conviction and remand for a new trial; defendant does not request an outright reversal. Defendant's request for relief is not dispositive, and in considering the relief we must first determine whether a retrial would violate defendant's right to be free from double jeopardy. See *People v. Jenkins*, 2012 IL App (2d) 091168, ¶ 25 (citing *People v. Taylor*, 76 Ill. 2d 289, 309 (1979)).

¶ 28    Both the federal and Illinois constitutions prohibit twice placing a person in jeopardy for the same criminal offense. *People v. Pinkonsly*, 207 Ill. 2d 555, 564-65 (2003) (citing U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10). Retrial is barred where the purpose is to afford the State an opportunity to supply evidence that it had previously failed to present, *e.g.*, when a conviction is reversed for evidentiary insufficiency. *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). However, retrial does not offend the double jeopardy clause when a conviction is overturned due to trial error (such as improperly admitting evidence), as long as the evidence at trial was sufficient to sustain a conviction. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995); see also *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988). "The relevant question to ask in reviewing the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution," including both properly and erroneously admitted evidence, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Olivera*, 164 Ill. 2d at 396.

¶ 29    At defendant's trial, the owner of the burglarized shop testified that the burglars stole jars containing incense. To connect defendant to the burglary, the State admitted into evidence the plastic jars that were recovered during the improper search of defendant. These recovered jars matched the description of the stolen jars and contained items that matched those that were stolen. Furthermore, testimony placed defendant in close proximity to the shop shortly after the burglary, while he possessed the clear plastic jars. Finally, the officers who initially stopped defendant testified that defendant was sweaty, as if he had recently been running. Based on this evidence, we conclude that a rational finder of fact could have found defendant guilty beyond a reasonable doubt. Accordingly, there is no double jeopardy issue that would bar a new trial. *Lopez*, 229 Ill. 2d at 368.

¶ 30                                    III. CONCLUSION

¶ 31    In summary, then, we hold that the search was improper and that the evidence obtained during the search should not have been admitted at trial. We also hold that the evidence in the record was sufficient to support a finding of guilt beyond a reasonable doubt, so there is no double jeopardy concern raised by the prospect of a retrial. Therefore, we vacate the trial court's judgment of conviction and sentence, reverse its denial of the suppression motion, and remand the cause for a new trial.

¶ 32    Judgment vacated; order reversed; cause remanded.