828 N.E.2d 237 (2005)
214 Ill.2d 476
293 Ill.Dec. 267
The PEOPLE of the State of Illinois, Appellant,
v.
James LEE, Appellee.
No. 97944.
Supreme Court of Illinois.
April 7, 2005.
*240 Lisa Madigan, Attorney General, Springfield, Jeff Tomczak, State's Attorney, Joliet (Gary Feinerman, Solicitor General, Linda D. Woloshin, Ira Kohlman, Assistant Attorneys General, Chicago, Norbert J. Goetten, Lawrence M. Bauer, Judith Z. Kelly, Office of the State's Attorneys Appellate Prosecutor, Ottawa, of counsel), for the People.
Robert Agostinelli, Deputy Defender, Mark D. Fisher, Assistant Defender, Office of the State Appellate Defender, Ottawa, for appellee.
Justice FREEMAN delivered the opinion of the court:
A divided panel of the appellate court held that the Joliet municipal offense of loitering for the purpose of engaging in drug-related activity was facially unconstitutional based on vagueness. As a result, the appellate court reversed the drug possession convictions of defendant, James Lee. 345 Ill.App.3d 782, 281 Ill.Dec. 236, 803 N.E.2d 640. Although we agree with the ultimate disposition, we do so on the more limited grounds that the arresting officers lacked probable cause to arrest defendant and, accordingly, do not reach the constitutional question.

BACKGROUND
Defendant was indicted in the circuit court of Will County on one count of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 2000)) and one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2000)). Defendant filed a motion to quash arrest and suppress evidence, contending that there was no probable cause for his arrest.
The circuit court held a suppression hearing. The only witnesses who testified *241 were Joliet police officers David Mueller and Guy Jones. The following evidence was adduced at the hearing. At approximately 2 p.m. on August 15, 2000, the officers received a dispatch instructing them to go to the corner of Second and Mississippi Streets. The officers were directed to investigate a citizen complaint regarding three males selling drugs at the corner. Officer Mueller had investigated prior complaints from that citizen. According to Mueller: "Most of them were well-founded." Also, the City had designated the area as "high-drug" and "high-gang."
The officers arrived at the area in a marked squad car and parked approximately two blocks away from the intersection of Second and Mississippi Streets. The officers observed defendant and the other two men for approximately three to five minutes. Officer Mueller testified that, upon his arrival at the scene, he saw the three men talking to the driver of a parked van. Mueller knew that defendant had previously been arrested for drug possession. Also, Mueller knew that one of the other two men with defendant, Willard May, was a member of a street gang. Officer Jones testified that the three men were standing on the corner when he saw the van pull up to the curb and park, and the three men approached the van and spoke to the driver.
The officers did not see an exchange of money or drugs. However, based on their experience, they believed that a drug transaction had taken place or was about to take place. When the van drove away, the officers approached the three men, who did not attempt to flee. A protective pat-down search did not disclose any weapons or contraband. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, the officers arrested defendant and the two other men for violating Joliet's drug-loitering ordinance.
The Joliet drug-loitering ordinance provides: "It is unlawful for any person to loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity," contrary to any "local, state or federal law prohibiting the manufacture, distribution, delivery, use, or possession of a controlled substance." Joliet Municipal Code § 21-10.1(a) (1990). Section (b) of the ordinance lists nine criteria as being "[a]mong the circumstances which may be considered in determining whether such purpose is `manifested'":
"(1) such person is a known unlawful drug user, possessor, or seller. * * *;
(2) such person is currently subject to an order prohibiting his or her presence in a high drug activity geographic area;
(3) such person behaves in such a manner as to raise a reasonable suspicion that he or she is about to engage in or is then engaged in an unlawful drug-related activity, including by way of example only, such person is acting as a `lookout';
(4) such person is physically identified by the officer as a member of a `gang' or association which has as its purpose illegal drug activity;
(5) such person transfers small objects or packages for currency in a furtive fashion;
(6) such person takes flight upon the appearance of a police officer;
(7) such person manifestly endeavors to conceal himself or herself or any object which reasonably could be involved in an unlawful drug-related activity;
(8) the area involved is by public repute known to be an area of unlawful drug use and trafficking; or

*242 (9) the premises involved are known to have been reported to law enforcement as a place suspected of drug activity." Joliet Municipal Code § 21-10.1(b) (1990).
Referring to the ordinance, Officers Mueller and Jones each testified that subsection (3) was present, in that defendant behaved in such a manner as to raise a reasonable suspicion that he was about to engage in or was then engaged in an unlawful drug-related activity; that subsection (8) was present, in that the area was known to be an area of unlawful drug use and trafficking; and that subsection (9) was present, in that the area had been reported to law enforcement as a place suspected of drug activity. In addition, Officer Mueller testified that subsection (4) was present, in that defendant was associating with May, a known member of a street gang which has as its purpose illegal drug activity. In addition to these criteria, Officer Mueller knew that defendant had been previously arrested for a drug offense. Officer Mueller testified that three criteria must be present to find a violation of the ordinance, while Officer Jones testified that two criteria must be present to find a violation.
Following the evidence, defense counsel argued both that the ordinance is unconstitutionally vague and that the officers lacked probable cause to arrest defendant. Without findings or any elaboration, the circuit court denied defendant's motion to suppress.
A jury trial was held at which substantially similar evidence was presented. The evidence also established that a search incident to defendant's arrest disclosed six baggies of cocaine totaling 0.8 grams in one of defendant's pants pockets. The jury convicted defendant of both offenses. The circuit court entered judgment on both offenses, but finding merger, sentenced defendant to a four-year prison term on the delivery conviction.
On appeal, a divided panel of the appellate court reversed defendant's convictions, holding that the Joliet drug-loitering ordinance was facially unconstitutional based on vagueness. 345 Ill.App.3d 782, 281 Ill. Dec. 236, 803 N.E.2d 640. Concurring in the judgment, Presiding Justice Holdridge opined that the ordinance is not unconstitutionally vague on its face. However, he was of the opinion that the police lacked probable cause to arrest defendant. Therefore, the justice agreed with the appellate court majority that defendant's convictions should be reversed. 345 Ill.App.3d at 788, 281 Ill.Dec. 236, 803 N.E.2d 640 (Holdridge, P.J., specially concurring).
We allowed the State's petition for appeal as a matter of right (134 Ill.2d R. 317). Additional pertinent background will be discussed in the context of the analysis of the issues.

ANALYSIS
In addition to seeking relief pertaining to trial and sentencing, defendant requested the appellate court to reverse the circuit court's denial of his motion to suppress, reverse his convictions, and vacate his sentence "for one or all of the following reasons." Defendant first argued that the Joliet drug-loitering ordinance was facially unconstitutional. Defendant next argued that "even if the ordinance was constitutional, the police lacked probable cause to arrest defendant for violating the ordinance."
The appellate court focused its analysis exclusively on defendant's constitutional challenge to the Joliet drug-loitering ordinance, concluding that the ordinance was facially unconstitutional based on vagueness. The court did not even mention that defendant raised alternative *243 contentions. 345 Ill.App.3d at 784-88, 281 Ill.Dec. 236, 803 N.E.2d 640. The appellate court's invalidation of the ordinance was erroneous. A court should not compromise the stability of the legal system by declaring legislation unconstitutional when a particular case does not require it. Trent v. Winningham, 172 Ill.2d 420, 425, 217 Ill.Dec. 741, 667 N.E.2d 1317 (1996); see People v. Cornelius, 213 Ill.2d 178, 189, 290 Ill.Dec. 237, 821 N.E.2d 288 (2004).
While the constitutional question was sufficient for this court to review the appellate court judgment as a matter of right (134 Ill.2d R. 317), as we view the record, it is not necessary to determine the constitutionality of the Joliet drug-loitering ordinance. This court will not consider a constitutional question if the case can be decided on other grounds. People v. Nash, 173 Ill.2d 423, 432, 220 Ill.Dec. 154, 672 N.E.2d 1166 (1996); People v. Chiafreddo, 381 Ill. 214, 219, 44 N.E.2d 888 (1942). It is a court's duty to construe a statute so as to uphold its validity whenever reasonably possible. People v. Huddleston, 212 Ill.2d 107, 129, 287 Ill.Dec. 560, 816 N.E.2d 322 (2004). Because a court will avoid determining a constitutional question if the case can be resolved on other, nonconstitutional grounds, we must first determine whether the arresting officers had probable cause to arrest defendant for violating the ordinance. See, e.g., In re Detention of Swope, 213 Ill.2d 210, 218, 290 Ill.Dec. 232, 821 N.E.2d 283 (2004); People v. McDaniel, 164 Ill.2d 173, 180, 207 Ill.Dec. 304, 647 N.E.2d 266 (1995).
Initially, we construe the offense under which defendant was arrested as did the concurring justice in the appellate court, who disagreed with the appellate court majority's finding of facial unconstitutionality:
"The Joliet ordinance prohibits loitering in a manner and under circumstances manifesting the purpose to engage in drug-related activity. [Citation.] * * * The word manifest means `to make evident or certain by showing or displaying.' Merriam-Webster's Collegiate Dictionary 707 (10th ed.1997). The word purpose means `something set up as an object or end to be attained'; hence the phrase on purpose means `by intent.' Merriam-Webster's Collegiate Dictionary 949 (10th ed.1997). These words establish a mens rea element (intent) and require, as a prerequisite to an arrest, that a suspect exhibit some show or display (overt conduct) signaling an intention to engage in drug-related activity. * * *
* * * An overt act is required to give the word manifesting its plain and ordinary meaning." (Emphases in original.) 345 Ill.App.3d at 788-89, 281 Ill.Dec. 236, 803 N.E.2d 640 (Holdridge, P.J., specially concurring).
Further:
"Although some of the nine criteria provided in the ordinance do not specify an overt act, this omission does not render the ordinance unconstitutional because the city council did not give such criteria conclusive effect. Rather, the council explained that the criteria merely describe circumstances `which may be considered' in the overall determination of whether the ordinance has been violated. Such consideration is guided by the plain meaning of the word manifesting. Thus, if police officers see a person who is a known drug user (criterion No. 1), they may become suspicious and conduct further surveillance, but they cannot arrest the person because he has not committed an overt act signaling a current intention to violate drug laws. If during further surveillance the officers see the *244 person engage in overt drug-related acts, then they can arrest him under the ordinance." (Emphasis in original.) 345 Ill.App.3d at 789, 281 Ill.Dec. 236, 803 N.E.2d 640 (Holdridge, P.J., specially concurring).
We now review the circuit court's denial of defendant's motion to suppress.
In reviewing a circuit court's ruling on a motion to suppress, mixed questions of law and fact are presented. Findings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review de novo the ultimate question of whether the evidence should be suppressed. People v. Pitman, 211 Ill.2d 502, 512, 286 Ill.Dec. 36, 813 N.E.2d 93 (2004); People v. Sorenson, 196 Ill.2d 425, 430-31, 256 Ill.Dec. 836, 752 N.E.2d 1078 (2001).
Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. An arrest without probable cause or a warrant based thereon violates these constitutional provisions. People v. Melock, 149 Ill.2d 423, 436, 174 Ill.Dec. 857, 599 N.E.2d 941 (1992). Effectuating these protections, the Code of Criminal Procedure of 1963 allows a warrantless arrest only when a peace officer "has reasonable grounds to believe that the person is committing or has committed an offense." 725 ILCS 5/107-2(1)(c) (West 2000). The statutory phrase "reasonable grounds" has the same substantive meaning as "probable cause." People v. Tisler, 103 Ill.2d 226, 236-37, 82 Ill.Dec. 613, 469 N.E.2d 147 (1984); see People v. Kidd, 175 Ill.2d 1, 22, 221 Ill.Dec. 486, 675 N.E.2d 910 (1996).
The determination of whether police had probable cause to arrest focuses on the factual considerations upon which reasonable and prudent people, not legal technicians, act. This determination is based on facts known to the police at the time the arrest was made. People v. Chapman, 194 Ill.2d 186, 217, 252 Ill.Dec. 474, 743 N.E.2d 48 (2000). A warrantless arrest cannot be justified by what is found during a subsequent search incident to the arrest. People v. Beattie, 31 Ill.2d 257, 260, 201 N.E.2d 396 (1964). Probable cause is an objective rule; an officer's subjective belief as to the existence of probable cause is not determinative. Chapman, 194 Ill.2d at 218-19, 252 Ill.Dec. 474, 743 N.E.2d 48, quoting People v. Buss, 187 Ill.2d 144, 209, 240 Ill.Dec. 520, 718 N.E.2d 1 (1999). This court has explained:
"The inquiry must focus on what was done and known by the police, not on what was believed, what the facts objectively viewed add up to, not what the officer on the scene believed they added up to. The latter approach would, of course, lead to differing conclusions based upon the experiences and response of a particular officer, while the former approach leads to the more uniform answer expected of the law." People v. Moody, 94 Ill.2d 1, 10, 67 Ill.Dec. 795, 445 N.E.2d 275 (1983).
The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt. Chapman, 194 Ill.2d at 218, 252 Ill.Dec. 474, 743 N.E.2d 48; *245 Tisler, 103 Ill.2d at 236, 82 Ill.Dec. 613, 469 N.E.2d 147. However, "[w]hen there is a question as to whether a crime has been committed, in addition to whether the defendant committed the crime, more evidence is required to demonstrate probable cause." Buss, 187 Ill.2d at 205, 240 Ill.Dec. 520, 718 N.E.2d 1; In re D.G., 144 Ill.2d 404, 410, 163 Ill.Dec. 494, 581 N.E.2d 648 (1991). Whether there is probable cause to believe that a defendant has committed a crime is based on an evaluation of all of the information available, including its source. Information from an informant is only one of the factors to be considered in the totality of the circumstances. Kidd, 175 Ill.2d at 23-24, 221 Ill.Dec. 486, 675 N.E.2d 910.
Applying these principles to this case, it is clear that Officers Mueller and Jones lacked probable cause to arrest defendant for violating the Joliet drug-loitering ordinance, as construed above. As a reason justifying defendant's arrest, each officer testified that defendant behaved in such a manner as to raise a reasonable suspicion that he was about to engage in or was then engaged in unlawful drug-related activity. See Joliet Municipal Code § 21-10.1(b)(3) (1990). However, the uncontradicted evidence shows that defendant stood on a street corner with two other men. Defendant did not make any motions or hand gestures; he did not place anything in his mouth or pockets. The officers did not see a drug transaction. They merely observed three men standing on a corner and a van, which no one on the corner summoned, pull to the curb and drive away. For all the officers knew, the driver of the van might have stopped and asked for directions, or to greet one or more acquaintances. These facts lack any overt act that would constitute probable cause for a warrantless arrest under the ordinance.
Each officer testified that the area where defendant was arrested was known to be an area of unlawful drug use and trafficking and that the area was reported to law enforcement as a place suspected of drug activity. See Joliet Municipal Code §§ 21-10.1(b)(8), (b)(9) (1990). However, the fact, by itself, that the officers found defendant in a certain area, without any overt act by defendant, does not establish probable cause for a warrantless arrest. See People v. Thomas, 25 Ill.2d 559, 561-62, 185 N.E.2d 668 (1962).
Additionally, Officer Mueller testified that defendant was associating with May, a known member of a street gang which has as its purpose illegal drug activity. See Joliet Municipal Code § 21-10.1(b)(4) (1990). However: "Gang membership itself is not a crime, and standing in a public place with no apparent purpose is not a crime. Adding these actions together does not make them any more criminal. When you add nothing to nothing, you get nothing." City of Chicago v. Youkhana, 277 Ill.App.3d 101, 114, 213 Ill.Dec. 777, 660 N.E.2d 34 (1995). Further, "probable cause to arrest a particular individual does not arise merely from the existence of probable cause to arrest another person in the company of that individual." People v. Creach, 79 Ill.2d 96, 102-03, 37 Ill.Dec. 338, 402 N.E.2d 228 (1980); see, e.g., People v. Carnivale, 61 Ill.2d 57, 58, 329 N.E.2d 193 (1975) (concluding that arrestee's "mere presence in the same hotel lobby with the other two defendants whom the police suspected of gambling activities did not justify his arrest"); People v. Galloway, 7 Ill.2d 527, 535, 131 N.E.2d 474 (1956) ("Jones was arrested merely because he was found in the presence of Galloway, and this could not make the Jones arrest lawful").
We observe that the citizen complaint justified the officers approaching *246 defendant and the other two men. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906-07. Under Terry, a police officer may briefly stop a person for temporary questioning if the officer has knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed or is about to commit a crime. People v. Ledesma, 206 Ill.2d 571, 583, 276 Ill.Dec. 900, 795 N.E.2d 253 (2003); People v. Thomas, 198 Ill.2d 103, 108-09, 259 Ill.Dec. 838, 759 N.E.2d 899 (2001). An informant's telephone tip may form the basis for a lawful Terry stop. However, the information must bear some indicia of reliability, and the information upon which the police act must establish the requisite quantum of suspicion. Ledesma, 206 Ill.2d at 583, 276 Ill.Dec. 900, 795 N.E.2d 253.
In this case, the informant complained that three African-American men were selling drugs on the corner of Second and Mississippi Streets. According to Officer Mueller, most of the prior complaints from that citizen were "well founded." When Officers Mueller and Jones arrived at the scene, they saw three African-American men standing on that corner. This information available to the officers, coupled with the factual corroboration of the tip's content and interpreted by commonsense considerations, would lead a reasonable person to believe that sufficient articulable suspicion had been established and that further investigation was warranted, thus justifying the stop. See Ledesma, 206 Ill.2d at 591-92, 276 Ill.Dec. 900, 795 N.E.2d 253. As we observed in Ledesma:
"While the officers could not observe an exchange of drugs or money from their vantage point, the officers' beliefs that the sufficient articulable suspicion to warrant the stops had been established were reasonable in this case in light of the specific content of the tip coupled with the officers' experiences and observations." Ledesma, 206 Ill.2d at 592, 276 Ill.Dec. 900, 795 N.E.2d 253.
The information provided by the citizen complaint was sufficient to justify the officers approaching defendant and conducting a Terry stop.
That being said, the officers did not conduct any further investigation to raise their reasonable suspicion to the level of probable cause for a warrantless arrest. The officers did not continue to observe defendant from their squad car. When the officers approached defendant and effectuated a Terry stop, they did not question defendant or otherwise investigate their reasonable suspicion. Further, the Terry protective pat-down search did not reveal any weapons or drugs. We agree with the concurring justice in the appellate court that the totality of the circumstances, including the citizen complaint, were certainly enough to heighten the officers' suspicion and warrant further investigation. However, the officers should have waited and watched for some overt act manifesting that defendant intended to engage in drug-related activity. 345 Ill.App.3d at 790, 281 Ill.Dec. 236, 803 N.E.2d 640 (Holdridge, P.J., specially concurring); see, e.g., People v. Adams, 131 Ill.2d 387, 398-403, 137 Ill.Dec. 616, 546 N.E.2d 561 (1989) (holding that totality of the circumstances, including information from informant, did not support finding of probable cause for warrantless arrest).
Also, Mueller knew that defendant had been previously arrested for a drug offense. However, the fact that Officer Mueller knew of defendant was not sufficient *247 by itself to create probable cause to arrest defendant without a warrant. See Beattie, 31 Ill.2d at 260, 201 N.E.2d 396. We observe that defendant did not attempt to flee or otherwise avoid the police when they approached. We agree with defendant's contention in the appellate court that none of these criteria, considered individually or in combination, with the other evidence of record, create probable cause to justify his warrantless arrest.
The lawfulness of defendant's warrantless arrest depends on its justification at the time it was made, and the discovery of cocaine upon search incident to arrest does not relate back to operate as a justification for the arrest. See Roebuck, 25 Ill.2d at 111, 183 N.E.2d 166; Galloway, 7 Ill.2d at 535, 131 N.E.2d 474. Defendant's convictions must be reversed.
In this case, we hold that the arresting officers lacked probable cause to arrest defendant for violating the Joliet drug-loitering ordinance. Therefore, we need not consider defendant's challenge to the facial constitutionality of the ordinance. See, e.g., People v. Fleming, 50 Ill.2d 141, 144, 277 N.E.2d 872 (1971); Roebuck, 25 Ill.2d at 111, 183 N.E.2d 166; People v. Metcoff, 392 Ill. 418, 423, 64 N.E.2d 867 (1946). We vacate the appellate court opinion, which focused exclusively on the constitutional issue. See, e.g., Oliveira v. Amoco Oil Co., 201 Ill.2d 134, 157, 267 Ill.Dec. 14, 776 N.E.2d 151 (2002).

CONCLUSION
For the reasons stated in this opinion, the judgment of the appellate court is vacated, and the judgment of the circuit court of Will County is reversed.
Appellate court judgment vacated; circuit court judgment reversed.