2020 IL App (1st) 172413-U

No. 1-17-2413

Order filed September 3, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 00459 |
| | ) | |
| DEANDRE LITTLE, | ) | Honorable |
| | ) | Darron Edward Bowden, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for aggravated unlawful use of a weapon when the record is insufficient for this court to address his claim that counsel was ineffective for failing to file a motion to suppress evidence.

¶ 2    Following a bench trial, defendant Deandre Little was found guilty of one count of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (3)(A-5) (West 2014)) and sentenced to one year of probation. On appeal, defendant contends that he was denied the effective assistance of counsel when trial counsel failed to file a motion to suppress evidence.

He argues that such a motion would have been successful when, absent exigent circumstances, a police officer was required to obtain a warrant before arresting him and entering and searching the curtilage of his home. We affirm.[1]

¶ 3    Following his arrest, defendant was charged with two counts of AUUW. The indictment alleged that defendant knowingly carried an uncased, loaded, and immediately accessible firearm on or about his person (count I) or in a vehicle (count II), when not on his land or his abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another as an invitee with that person's permission, and he had not been issued a currently valid license under the Firearm Concealed Carry Act. See 720 ILCS 5/24-1.6(a)(1), (3)(A-5) (West 2014).

¶ 4    During opening statements, the defense alleged, in pertinent part, that after an argument involving defendant, his girlfriend Angelique Simmons, and her family, Simmons's brother, Brandon Harris, displayed a firearm and appeared to follow defendant. According to counsel, defendant removed his firearm from the trunk of his vehicle, loaded it, placed in the backseat, and drove home. The defense further argued that Simmons called the police and "made a statement of some sort" which resulted in police ordering defendant from his vehicle at gunpoint and detaining him at his home. A subsequent search of defendant's vehicle led to the discovery of the firearm. The defense concluded that under the circumstances, defendant was justified in placing the firearm in the vehicle despite not having a concealed carry permit because he had a reasonable fear of being shot.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 5    Officer Gray of the Riverdale Police Department testified that while on patrol on the afternoon of July 12, 2015, he received a call through dispatch regarding a domestic disturbance involving a firearm.[2] The call included a description of the people involved, defendant's name, and that defendant had left the scene in a gray Volkswagen. Gray was familiar with defendant and relocated to defendant's residence. Another officer also responded in a separate vehicle.

¶ 6    As Gray pulled onto defendant's street, he saw the Volkswagen described in the call on the street outside a residence "going into the driveway." Gray then performed a "high-risk" traffic stop. He parked "on the street at the end of the driveway," approximately one car length from the Volkswagen, activated his lights, and ordered defendant from the Volkswagen. At this point, Gray was standing at the driver's side door of his vehicle, "maybe a car length" away from defendant, and both Gray and the other officer had their firearms drawn.

¶ 7    Gray ordered defendant to exit the vehicle and get on the ground. Defendant complied, and was handcuffed and placed in the back of Gray's squad car. Gray then approached the Volkswagen, and through the window observed a black firearm. Gray's sergeant arrived on the scene and recovered the firearm, which was loaded. During cross-examination, Gray testified that defendant was cooperative and agreed to the sergeant entering the Volkswagen.

¶ 8    Officer Martin of the Riverdale Police Department testified that she responded to a domestic battery call, spoke with Simmons, and met with defendant at a police station.[3] Martin advised defendant of the *Miranda* warnings. Defendant subsequently stated that while arguing with Simmons, Harris came outside, said "I know you have guns and I've got guns too," and lifted

---

[2] Gray's given name is not included in the record on appeal.

[3] Martin's given name is not included in the record on appeal.

his shirt to reveal a handgun. Defendant ran to his vehicle, drove around the corner, stopped, and removed his firearm from the trunk because he believed Harris would follow him. Then defendant put the firearm in the backseat and drove home.

¶ 9 The State presented a stipulation that (1) defendant was issued a Firearm Owners Identification (FOID) Card on December 4, 2014, which would expire on November 1, 2024, and (2) the Illinois State Police Firearm Forensic Services Bureau had not received an application from defendant for a concealed carry license.

¶ 10 Defendant testified that he was heading to the shooting range with a friend when he received several calls from Simmons, his girlfriend at the time and the mother of two of his children. His firearm was in a lockbox in the trunk. Simmons was upset because the mother of another of defendant's children visited her home. Defendant went to Simmons's home. Simmons was outside and began yelling at defendant. Simmons's mother also began yelling from a third-floor window of the building. Harris then opened the building's door, raised his shirt, and brandished a weapon. Harris stated, "I heard you have guns, I have my guns right now." Defendant turned, ran to his vehicle, and drove away. As defendant left, he noticed Harris entering a red truck, so after defendant turned a corner, he stopped, removed his firearm from the trunk, and put it in the backseat. Defendant then drove home through an alley to make sure that he was not followed. As defendant exited the alley, he saw a police vehicle. He was in his driveway when officers ordered him from the vehicle.

¶ 11 During cross-examination, defendant testified he went to Simmons's home to calm her and denied raising his voice. Once he saw Harris's firearm, he left. Although defendant could not see if Harris started or moved the truck, defendant saw the lights go on and "clearly" believed that his

life was in danger. To access his firearm, he exited his vehicle, opened the back door, reached into the trunk through the backseat, and retrieved the lockbox. Defendant loaded his firearm and placed it in the backseat behind the passenger seat. He did not go to a police station; rather, he went home because that was "the safest place." Neither defense counsel nor the prosecutor asked defendant to confirm or deny Gray's testimony that defendant allowed the police to enter his vehicle.

¶ 12    During closing argument, the defense submitted that although the State thought it was more reasonable to go a police station, there was nothing illogical about defendant going home to assess the situation. The defense asked the court to find defendant acted reasonably under the circumstances when he violated the law out of a necessity for protection, and to acquit him. The State responded that a necessity defense failed because defendant bore blame for the situation, as it did not make sense for Simmons and her family to react as they did if defendant were as calm as he claimed. The State posited that defendant took part in a confrontation that resulted in Harris coming outside and displaying a weapon. Moreover, defendant did not act reasonably when he admitted that he never saw Harris's truck move, yet he stopped his vehicle, retrieved his firearm, loaded it, and placed it in his backseat.

¶ 13    The trial court found defendant guilty of count II for AUUW in that he carried a weapon in his vehicle while not having been issued a valid concealed carry permit, and not guilty of count I. The trial court denied defendant's motion for a new trial. After hearing argument, the trial court sentenced defendant to one year of probation. Defendant filed a timely notice of appeal.

¶ 14    On appeal, defendant contends that he was denied the effective assistance of counsel when trial counsel failed to file a motion to suppress the firearm. He argues that such a motion would

have been successful as, absent exigent circumstances, the officers should have obtained a warrant for his arrest and to enter and search the curtilage of his home.

¶ 15    The State responds that defendant cannot establish that trial counsel was ineffective because the record lacks information critical for determining whether a motion to suppress would have prevailed, including details relevant to probable cause, and a description of defendant's driveway and the location of his vehicle during the encounter.

¶ 16    When evaluating a claim of ineffective assistance of counsel, we apply a two-prong test under which the defendant must prove his counsel's performance fell below an objectively reasonable standard and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007). Acts or omissions by counsel will not be considered matters of strategy, however, where there is no sound tactical reason that could conceivably support the act or omission. *People v. Nunez*, 263 Ill. App. 3d 740, 748 (1994).

¶ 17    Accordingly, in those cases when the defendant alleges that trial counsel was ineffective for failing to file a motion to suppress evidence, he must overcome a strong presumption that counsel's decision was the result of sound trial strategy. *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 38. In this context, a defendant establishes prejudice by demonstrating "the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. Counsel cannot be deemed ineffective for failing to file a futile motion. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 18 Here, defendant's ineffective assistance argument is premised upon the officers' alleged lack of probable cause to arrest him and enter the curtilage of his home, *i.e.*, the driveway where his vehicle was parked. According to defendant, "the only information" Gray had was that defendant, who had a FOID card, was involved in a domestic dispute involving a firearm. Defendant concludes that Gray had "insufficient information to believe that a crime had been committed" because "the record is devoid of any information" that defendant used the firearm he was legally entitled to possess in an illegal manner.

¶ 19 An arrest made without probable cause violates the United States and Illinois constitutions' prohibitions against unreasonable searches and seizures. *People v. Lee*, 214 Ill. 2d 476, 484 (2005). A police officer has probable cause to arrest an individual when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the individual has committed a crime. *People v. Grant*, 2013 IL 112734, ¶ 11. An officer's determination of probable cause focuses on the facts known to the officer at the time the arrest was made. *Lee*, 214 Ill. 2d at 484. "A warrantless arrest cannot be justified by what is found during a subsequent search incident to arrest." *Id*. A court does not concern itself with an officer's subjective belief as to the existence of probable cause; rather, we apply an objective analysis. *Id*. A officer needs only reasonable grounds to believe a defendant committed a crime to justify his or her arrest. *People v. Buss*, 187 Ill. 2d 144, 206 (1999). "The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt." *Lee*, 214 Ill. 2d at 485. We must examine the totality of the circumstances to determine whether there is probable cause to believe defendant committed a crime and, therefore, was subject to arrest. *Id*.

¶ 20    It is the defendant's burden to establish a factual basis demonstrating an unargued suppression motion would have been meritorious. *People v. Burnett*, 2019 IL App (1st) 163018, ¶ 16. "As the United States Supreme Court has observed, a reviewing court often cannot entertain a claim of ineffective assistance of counsel on direct review when the claimed error was not a focus in the case below." *Id.* ¶ 12 (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). Thus, some claims of ineffective assistance of counsel must be pursued under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), where a factual record to support the claim may be developed. *People v. Veach*, 2017 IL 120649, ¶¶ 46-48; see also *People v. Erickson*, 161 Ill. 2d 82, 87-88 (1994) (ineffective-assistance claims based on what counsel ought to have done may depend on proof of matters which are not in the record and such claims are not subject to procedural default in proceedings under the Act).

¶ 21    In this case, the record before us lacks sufficient information about the circumstances of defendant's arrest for us to determine whether a suppression motion would have prevailed. Because no motion to quash arrest and suppress evidence was filed and the case proceeded to a bench trial, the State only sought to prove that defendant committed the charged offenses, and "had no reason to demonstrate the factual basis that putatively gave the officers probable cause to arrest defendant in the first place." *Burnett*, 2019 IL App (1st) 163018, ¶ 11.

¶ 22    In reaching this conclusion, we are mindful that in *Veach*, our supreme court cautioned against categorically determining that all ineffective assistance claims are better suited to collateral review. *Id.* ¶¶ 46-48. Rather, we should "carefully consider each ineffective assistance of counsel claim on a case-by-case basis" to determine if the circumstances permit us to adequately address

a defendant's ineffective assistance of counsel claim on direct review before deferring consideration of the claim to collateral review. *Id.* ¶ 48.

¶ 23    Here, after a careful review of the record on appeal, we cannot consider defendant's claim of ineffectiveness because the record in this case was not developed to establish the existence or lack of probable cause. Consequently, there are numerous unanswered factual questions that preclude us from deciding the substantive fourth amendment claims that underlie defendant's claim of ineffective assistance of counsel. See *Henderson*, 2013 IL 114040, ¶ 15 (holding that part of finding counsel ineffective requires determining the merits of the unfiled motion to suppress).

¶ 24    Specifically, we do not know the details of the dispatch call detailing the interaction between Simmons and defendant, and what information Gray or the other responding officer had when they arrived at defendant's residence. At trial, there was no questioning or testimony about why Gray characterized his interaction with defendant as a "high-risk" traffic stop, what facts were known to the other responding officer, and why the officers had their firearms drawn when they approached him because this information was not relevant to the AUUW charges. *People v. Gayden*, 2020 IL 123505, ¶ 32 (the State had "no reason to establish the factual basis that gave the officers probable cause to arrest [the] defendant in the first place, as that information was not necessary to prove" the offense of which he was accused). Moreover, although defendant argues that the location of his vehicle was such that Gray was required to obtain a warrant prior to entering the curtilage of defendant's home, the record contains no details about defendant's driveway or the exact location of the vehicle. Gray, however, testified that defendant allowed a sergeant to enter his vehicle, neither defense counsel nor the prosecutor questioned defendant on that issue, and defendant neither confirmed nor denied Gray's testimony. We therefore have no means to

determine the basis for the officers' probable cause determination. See *Burnett*, 2019 IL App (1st) 163018, ¶ 12.

¶ 25    *Burnett* is instructive. There, the defendant was a passenger in a van that was curbed after officers noticed it lacked a front license plate. During the stop, an officer observed the defendant place an object in the vacant third row of seats. When the van's driver could not produce a driver's license, all occupants were ordered from the van. The object, a semiautomatic handgun, was then recovered from the van and the defendant was arrested. The defendant did not have a valid FOID card or concealed carry license, so he was charged with, in pertinent part, AUUW. There was no indication that the officers knew that the defendant had a felony record or that he lacked a FOID card and concealed carry license before prior to arresting him. Defendant was ultimately convicted of AUUW and sentenced to 4½ years in prison. On appeal, the defendant contended that he was denied effective assistance when trial counsel failed to file a motion to quash arrest because he was arrested without probable cause where the mere possession of a firearm was no longer sufficient to establish probable cause to justify an arrest.

¶ 26    We found that the record did not contain sufficient information about the circumstances of the defendant's arrest from which we could determine whether he was prejudiced by counsel not filing a motion to quash arrest. *Id.* ¶ 11. Because the case went trial without defendant seeking to first quash his arrest, the State only sought to prove that the defendant committed the charged offenses and had "no reason" to establish the factual basis that gave the officers probable cause to arrest defendant in the first place. *Id.*

¶ 27    We also rejected the defendant's argument that there was no evidence that prior to his arrest, the officers had probable cause to believe that he lacked a FOID card or a concealed carry

license. As we explained, the defendant attempted "to spin the lack of testimony about probable cause into a conclusion that *there was* no probable cause," and had drawn "an affirmative conclusion from a negative premise." (Emphasis in original.) *Id.* ¶ 14.

¶ 28    Here, we are similarly not persuaded by defendant's argument that because the record before this court does not establish exigent circumstances and probable cause, exigent circumstances and probable cause did not exist. See *Gayden*, 2020 IL 123505, ¶ 33 ("The lack of evidence currently in the record, however, does not establish as fact that there was no evidence to support a probable cause or exigent circumstances determination."). Rather, we conclude, as we did in *Burnett*, that the lack of evidence currently in the record concerning probable cause does not mean there was no evidence to support a probable cause determination and does not demonstrate defendant's arrest was unjustified. *Burnett*, 2019 IL App (1st) 163018, ¶ 14; see also *Gayden*, 2020 IL 123505, ¶¶ 30, 33 (while the facts relating to the specific charge against defendant were developed at trial, "this is not true with regard to the circumstances leading up to and surrounding" his arrest because those events were not at issue and the State did not have to establish "justification" for the arrest).

¶ 29    Ultimately, we decline to address defendant's ineffective assistance of counsel claim because the record, as it exists, is insufficient for us to determine whether trial counsel's decision not to file a motion to suppress evidence was strategic, or whether such a motion would likely have succeeded. *Veach*, 2017 IL 120649, ¶ 46. Accordingly, because on this record defendant is unable to overcome the "strong presumption" that his attorney's failure to file the motion was the result of sound trial strategy, we must affirm his conviction. See *Joiner*, 2018 IL App (1st) 150343, ¶ 38.

¶ 30    For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 31    Affirmed.