**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210470-U

Order filed October 6, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0470 Circuit No. 20-CM-312 |
| | ) | |
| CONNIE S. MAIN, | ) ) | Honorable William A. Rasmussen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDade delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) Because defendant has failed to secure the filing of the reports of proceedings on appeal, the appellate court cannot resolve her claims of error that require factual determination; (2) without factual testing of her claim that officers obtained testimonial statements from defendant while she was in custody, we cannot assess whether her *Miranda* rights were violated; and (3) the State did not violate its *Brady* requirement where the alleged materials were initially within defendant's control.

¶ 2     Defendant, Connie S. Main, was charged with disorderly conduct, a Class C

misdemeanor in violation of section 26-1(a)(1) of the Criminal Code of 2012 ("Code"). 720

ILCS 5/26-1(a)(1) (West 2020). The State elected not to seek incarceration as a penalty and Main proceeded to trial *pro se*. The jury found her guilty, and the court sentenced her to pay fines totaling $554. Main now appeals, alleging multiple claims of miscarriage of justice. For the reasons that follow, we affirm her conviction and sentence.

¶ 3                                    FACTS

¶ 4         On May 27, 2020, the State charged Connie S. Main with three counts of disorderly conduct, including one count alleging that on or about May 7, she "knowingly yelled at, swore at, and berated David Benson in such an unreasonable manner as to alarm and disturb [him] and provoke a breach of the peace," in violation of section 26-1(a)(1) of the Code. *Id.* § 26-1(a)(1). A warrant for her arrest was issued the same day and bail was set at $1500—with 10% to apply.

¶ 5         On June 18, Main was arrested and posted a bond of $850 to cover her release on all the charges of disorderly conduct. At a subsequent bond hearing on July 22, Main appeared *pro se* and filed a motion to dismiss the complaint and a motion to amend her bond, alleging that (1) she had evidence of her innocence; (2) her due process rights were violated when "she was arrested without proper investigation of matters or being informed of or asked about matters"; (3) her due process was violated by the use of deceptive or inaccurate evidence; (4) she was not properly informed of her charges at her arrest; (5) she was not shown the arrest warrant until after her booking; (6) she was not allowed to make a phone call for four-to-five hours; and (7) the reports provided by the State's witnesses were false.

¶ 6         On August 20, Katherine Drummond entered her appearance as Main's attorney. Through her new counsel, Main entered a plea of not guilty, filed a motion for discovery and made a speedy trial demand. Counsel also responded to the State's discovery motion with a "voluntary statement and a video" of an alleged May 28 altercation. On November 6, the State

announced that it was ready for trial, suggesting a trial date of November 16. The same day, defense counsel filed a motion for substitution of judge, seeking to remove Judge James Standard. Four days later, the circuit court reassigned the case to Judge William A. Rasmussen.

¶ 7        On November 13, the court ordered the State "to tender all field notes" in the case to Main and to provide her with the file-stamped executed arrest warrants in all cases pending against her. On November 16, Main filed her witness list, identifying John Main (her husband) as the sole defense witness. Trial was not held that day. Instead, Main—again through her counsel—filed a motion for supplemental discovery. On November 25, Main's counsel filed a motion to withdraw, alleging that the attorney-client relationship had broken down. Main subsequently filed a *pro se* entry of appearance and a motion to join all matters pending against her.

¶ 8        On February 4, 2021, Main filed a motion, announcing she was ready for trial and contending that she never received the "field notes" the court had ordered the State to tender. She explained that her counsel said she had received the police reports and arrest videos. However, she alleged that she had not received any discovery from the State. The following day, Main filed a new motion to dismiss. The State characterized the motion as challenging the sufficiency of the evidence, which it noted was an issue to be resolved at trial.

¶ 9        The court set trial for July 14, 2021. It ordered the State to provide Main with a statement of the case, its witness list, and all documents intended to be introduced at trial. Main was ordered to make the same disclosures. On the day of the trial, Main filed another motion to dismiss, alleging: (1) there was no probable cause for her arrest; (2) her *Miranda* rights were violated; (3) she was unlawfully detained; and (4) the State failed to timely notify her of a previous filing. The court denied her motion and rescheduled the trial for August 24.

3

¶ 10 The case proceeded to a two-day trial, after which the jury returned a signed verdict finding Main guilty of the offense charged. The court imposed no jail time but ordered fines of $554. Main subsequently filed a motion for a new trial, which the trial court denied on September 16, 2021.

¶ 11 Main timely filed her notice of appeal, which was later amended. The common law record was filed with the appellate court, but no report of proceedings was included. Main clarified at oral argument that the choice not to include the report of proceedings was intentional on her part because she did not believe it was necessary for our review.

¶ 12                                                    ANALYSIS

¶ 13 On appeal, Main raises four claims of "miscarriage of justice," contending that (1) the arresting officers failed to tell her the reasons for her arrest and violated her *Miranda* rights; (2) the prosecution violated her *Brady* rights by not introducing evidence at trial that had been submitted by the defense in discovery; (3) the trial court allowed the case to proceed under circumstances that violated her constitutional rights; and (4) the jury was biased against her due to a familial relationship between her accuser and one of the jurors.

¶ 14 For each of her claims, Main requests that her conviction be vacated, and the matter remanded for a new trial. The State notes that because Main has failed to include the reports of any proceedings in the trial court on appeal, this court cannot address the issues presented. "Where no report of proceedings is included in the record on appeal, the presumption is that there was sufficient evidence to sustain the decision of the trial court." *People v. Rockett*, 85 Ill. App. 2d 24, 29 (1967) (citing *Skaggs v. Junis*, 28 Ill. 2d 199, 201-02 (1963)). "Also, in the absence of a report of proceedings, no issue of fact may be reviewed." *Id.* (citing *People ex rel.*

4

*Rose v. Craig*, 404 Ill. 505, 508 (1950)). Thus, where Main's allegations turn on an issue of fact, we cannot review the question presented without a report of proceedings.

¶ 15                    A.  The Arresting Officers' Alleged Misconduct

¶ 16       Main's first issue on appeal alleges two claims of misconduct by the arresting officers. First, she argues that the officers had no probable cause to arrest her for the offense of disorderly conduct because her arrest was based solely on verbal statements of her accuser, David Benson. She also contends that the fact the officers delayed her arrest by 41 days from the issuance of the arrest warrant indicates they knew they did not have probable cause to arrest her.

¶ 17       "The determination of whether police had probable cause to arrest focuses on the factual considerations upon which reasonable and prudent people, not legal technicians, act. This determination is based on facts known to the police at the time the arrest was made." *People v. Lee*, 214 Ill. 2d 476, 484 (2005). "The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt." *Id.* at 485. "Whether there is probable cause to believe that a defendant has committed a crime is based on an evaluation of all of the information available, including its source." *Id.*

¶ 18       Main maintains that no report of proceedings is necessary because all the facts are in the record before us. We disagree. The facts on which the warrant was issued are not before us. The record does not include any affidavit from the officers applying for the warrant—or any testimony thereof. Nor does the record contain the factual determination of the magistrate who issued the arrest warrant. We cannot conduct the factual evaluation necessary to resolve this issue without a report of proceedings.

¶ 19       Main also argues that her *Miranda* rights were violated. She contends that the officers never informed her of the charges against her, did not allow her to make a phone call, and failed

5

to read her rights. We reject Main's claim of a *Miranda* violation because she has not identified a custodial statement improperly obtained from her and offered into evidence at trial.

¶ 20    A person is denied the constitutional protections recognized in *Miranda v. Arizona*, 384 U.S. 436, 469 (1966), if she is subject to custodial interrogation without first being "warned (1) of [her] right to remain silent, (2) that any statement [she] makes may be used against [her], (3) that [she] has the right to have an attorney present, and (4) that if [she] cannot afford an attorney, one will be appointed for [her]." *People v. Barnett*, 393 Ill. App. 3d 556, 558 (2009). Any statements obtained from a person as a result of a custodial interrogation are admissible at trial only if taken in compliance with *Miranda*. *Id.*

¶ 21    In short, to establish a *Miranda* violation, Main must prove that the State offered or sought to offer statements at trial obtained from her in the absence of the requisite warnings. The purpose of a *Miranda* claim is to suppress any such statements and all evidence seized as a result. Main does not contend that custodial statements obtained from her were introduced at trial. Instead, she maintains that without the proper *Miranda* warnings, her arrest is without probable cause. That is incorrect. *Miranda* warnings are only required when the defendant is subject to custodial interrogation. Therefore, without a factual showing that the law enforcement officers (1) obtained testimonial statements from her (2) while she was in custody, we cannot conclude that Main's *Miranda* rights were violated.

¶ 22    B. The State's Alleged Prosecutorial Misconduct

¶ 23    Main asserts several claims of misconduct against State's Attorney Jeremy Karlin. She first alleges that he proceeded with the prosecution against her despite the fact that she had

6

provided the State with evidence of her innocence in a discovery disclosure.[1] She contends that, by failing to introduce it at trial, the State suppressed the evidence in violation of her right under *Brady v. Maryland*, 373 U.S. 83 (1963). We disagree.

¶ 24        The *Brady* "rule seeks to eliminate any asymmetry of information between the State and the accused." *People v. Gomez-Ramirez*, 2021 IL App (3d) 200121, ¶ 19. "It prohibits actual or inadvertent suppression by the State of evidence" favorable to criminal defendants "that is in [the State's] control." *Id.* ¶ 20. A *Brady* violation occurs when the State hides evidence from the defendant that could be used by or on his or her behalf to avoid a finding of guilt. Where both parties are aware of the evidence at issue and are equally capable of obtaining the evidence, there is no *Brady* violation even if the State does not provide the evidence to the defendant.

¶ 25        Here, Main admits that she provided the videotape evidence to the State as part of her disclosure. She also alleged that the evidence included a surveillance video of her farm and the alleged altercation with Benson. Her admission and allegation show that she knew about the evidence, it was initially in her possession, and it remained within her control to produce at trial. We, therefore, cannot find that a *Brady* violation occurred.

¶ 26        Main further maintains that because Karlin was aware of the evidence, he should have known that she was innocent of the offense and thus should not have prosecuted her. At oral argument, she characterized his behavior as "malicious prosecution." Because this allegation of malicious prosecution was neither asserted nor litigated in the trial court and is being raised for the first time in this appeal, we cannot properly address it.

---

[1] Although we cannot determine whether a video of the May 7 incident was included in discovery, we have reviewed the composite video that Main alleges in her brief was prepared for tender for the jury and the May 7 incident is not in that video.

¶ 27        Main next claims that her sixth amendment right to counsel was violated despite her request that an attorney be appointed for her. The sixth amendment right to counsel applies only in cases where the defendant is actually sentenced to imprisonment. *People v. Easley*, 288 Ill. App. 3d 487, 493 (1997) (citing *Scott v. Illinois*, 440 U.S. 367, 373-74 (1979)). Because the State announced prior to trial that it would not be seeking a term of incarceration as part of her penalty, Main was not entitled to the appointment of counsel.

¶ 28        Finally, Main also argues that the prosecution's inaction led to the violation of her speedy trial right. We note that Main made her speedy trial demand on August 20, 2020, and the State announced that it was ready for trial on November 6, 2020, with a tentative trial date of November 16. Because Main was on pretrial release, she should have been tried "within 160 days from the date" she demanded trial unless a proper delay occurred. 725 ILCS 5/103-5 (West 2020). Here, only 89 days had elapsed between the date of the speedy trial demand and the date the State announced it was ready for trial. Several delays occurred thereafter. Without a proper record to determine the nature of the delays and the party to whom they should be attributed, we cannot determine whether Main's speedy trial rights were violated.

¶ 29                    C.  The Trial Court's Alleged Miscarriage of Justice

¶ 30        Main maintains that six judges presided over her case before the court finally assigned Judge Rasmussen. She contends that Judge Rasmussen engaged in multiple instances of misconduct, including ignoring her complaints about unserved subpoenas, failing to direct a "not guilty verdict" despite the lack of evidence against her and ignoring her insistence regarding a *Brady* violation. Each of these allegations requires the court to make factual findings. Again, without a complete record, we cannot resolve these issues.

¶ 31                    D.  The Trial Court's Alleged Failure to Remove a Biased Juror

8

¶ 32    Main claims that the jury was biased against her. She also argues that the trial court engaged in judicial misconduct by preventing her from presenting her challenge to a specific juror and allowing the trial to proceed with the juror. Specifically, Main contends that the juror had a familial relationship with her accuser (Benson) because the juror had an in-law who lived in the same town where Benson maintains his business.

¶ 33    The burden of showing that a potential juror is not impartial rests on the party challenging the juror. *People v. Tondini*, 2019 IL App (3d) 170370, ¶ 18. Satisfying this burden requires more than a mere suspicion of bias. *Id.* A court's failure to remove a juror for cause is grounds for reversal only if the defense had exercised all its peremptory challenges and a biased juror was allowed to sit on the jury. *Id.* Here, without a complete record, we cannot determine whether Main's objection had factual merit or whether Main exercised all her peremptory challenges, and the trial court abused its discretion in denying her for-cause challenge against the juror.

¶ 34    Because the record on appeal provides us no factual basis for addressing and resolving the issues raised by Main, the verdict reached by the jury and entered by the trial court must be affirmed.

¶ 35                                   CONCLUSION

¶ 36    The judgment of the circuit court of Knox County is affirmed.

¶ 37    Affirmed.