2020 IL App (1st) 180167-U

THIRD DIVISION
September 30, 2020

No. 1-18-0167

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 C 441269 |
| | ) | |
| DANNY MUNOZ, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County denying defendant's postconviction petition after a third-stage evidentiary hearing is affirmed; defendant failed to prove he received ineffective assistance of trial counsel based on trial counsel's failure to file a motion to suppress evidence seized after a pat-down search.

¶ 2    In 2006, following a bench trial, the circuit court of Cook County convicted defendant, Danny Munoz, of possession of cocaine. Defendant also pled guilty to a violation of bail bond while on bail for that offense. Defendant filed a direct appeal in which he only challenged the amount of fines and fees imposed as a result of his conviction. In 2015 defendant filed a petition for postconviction relief based on ineffective assistance of counsel at trial. The petition proceeded to a third-stage evidentiary hearing after which the trial court denied the petition.

¶ 3    For the following reasons, we affirm the trial court's order denying defendant's petition for postconviction relief.

¶ 4                            BACKGROUND

¶ 5    In 2006 police stopped a vehicle in which defendant was the front-seat passenger for not having a functioning rear registration light. As police initiated the stop Officer Filskov of the Northlake Police Department observed defendant and the backseat passenger both pushing themselves up in their seats and reaching toward their midsections. This led Officer Filskov to believe the two passengers were attempting to hide something. When police stopped the vehicle they ordered both passengers to exit. Officer Filskov asked defendant whether or not he had any weapons and defendant responded he did not. Officer Filskov proceeded to "pat down" defendant and felt a hard object at the front of defendant's pants. Officer Filskov asked defendant what the hard object was to which defendant responded it was cocaine. Officer Filskov seized the cocaine and arrested defendant. The State charged defendant with possession of a controlled substance and possession of a controlled substance with intent to deliver.

¶ 6    Defendant paid a bond and was released but failed to appear in court. The State charged defendant with Violation of Bail Bond. Defendant pled guilty to that offense and the trial court sentenced him to four years' imprisonment.

¶ 7    The charges resulting from the seizure of the cocaine proceeded to a bench trial. Defendant's trial attorney testified at the evidentiary hearing on defendant's postconviction petition that defendant's recitation at trial of the events of the traffic stop was not different than Officer Filskov's police report. The trial court found defendant guilty of possession of the cocaine and not guilty of possession with intent to deliver. The court sentenced defendant to four years' imprisonment to be served consecutively to defendant's sentence for Violation of

Bail Bond. Defendant filed a direct appeal in which he successfully challenged his fines and fees.

¶ 8    In 2015 defendant filed a *pro se* petition for postconviction relief. Defendant's postconviction petition alleged defendant received ineffective assistance of counsel at trial because the officer lacked a reasonable suspicion defendant was armed and defendant's trial counsel failed to file a motion to suppress the cocaine. Defendant's *pro se* petition proceeded to the second stage of postconviction proceedings, the trial court appointed counsel to represent him, and defendant's postconviction counsel filed a supplemental petition (hereinafter, collectively, "the petition"). Postconviction petitioner's supplemental petition argued defendant's trial counsel's performance in failing to move to suppress the cocaine was deficient because the officer searched defendant without a warrant or reasonable suspicion, there is no presumption a passenger in a vehicle is armed, and defendant's movements in the car immediately before the traffic stop did not show defendant was armed. The supplemental petition argued trial counsel's deficient performance prejudiced defendant because a motion to suppress would have been meritorious and suppressed the only evidence defendant committed a crime.

¶ 9    The State filed a motion to dismiss the petition. The trial court denied the State's motion to dismiss and the petition proceeded to a third-stage evidentiary hearing. At the evidentiary hearing the trial court admitted the police reports of the traffic stop. The report Officer Filskov initialed describes defendant's movements in the vehicle as described above. The report further states that defendant later told police the other passenger in the car gave defendant the cocaine. Defendant also submitted the transcript of his preliminary hearing into evidence. At the

preliminary hearing Officer Filskov testified the two passengers moved as police were stopping the vehicle but once the car stopped no one in the car moved.

¶ 10    Defendant's trial attorney testified at the evidentiary hearing on the petition. Trial counsel testified defendant's recitation of the events of the night police seized cocaine from him was not in any way different than what was in the police reports. Defendant had been arrested on September 13, 2006. Defendant's trial attorney testified, in pertinent part, that he conducted a bench trial for defendant. Counsel testified that he had previously represented defendants in drug cases and that he was familiar with the practice of law involving possession. Counsel read the police report before going to trial and knew before trial that three tactical police officers stopped the vehicle in which defendant was a passenger for a malfunctioning rear registration light. After reading the report counsel's theory of the case was to "try the case down" to simple possession rather than possession with intent to deliver and that he would argue any drugs recovered from his client were not his client's drugs but had just been given to him by someone else in the car.

¶ 11    Counsel did not file a motion to suppress evidence challenging the traffic stop or the search of defendant. When asked if counsel "looked up any case law about what the police are allowed to do during an auto stop" counsel responded, "No, I relied on my own knowledge as an attorney as to what the police officers could do in a police stop." Nonetheless counsel did not "go into any specific legal research in [defendant's] case." Counsel testified he did talk to defendant about whether or not defendant should file a motion to quash arrest and they weighed that against their trial strategy.

¶ 12    Defendant's trial counsel testified he has been an attorney since 1998. He previously litigated dozens of motions to quash arrest in drug cases as an Assistant State's Attorney. He has

been in his current private practice since 2001. His current practice is 90 to 95 per cent criminal and 35 to 40 percent of those are drug cases. In his current practice counsel has filed motions to quash arrest and suppress evidence in drug cases, has researched the law relative to suppression, and researched the law regarding traffic stops. Counsel testified he discussed the information in the police reports with defendant and his opinion as to how to proceed with the case based on what was in the police report. Counsel learned from reading the transcript of defendant's preliminary hearing (counsel did not represent defendant at that time) that the officer "observed [defendant] pushing [himself] up [and] down in the seat as if [he was] reaching down into [his] waistband area with [his] hands." When asked if his advice to defendant as to how to proceed with the case was affected by counsel's understanding of the case law and what the officer described, counsel testified it was, and further explained, "Because of the movements that the officer alleged to have seen in the vehicle, I advised [defendant] that he was in his right to remove the passengers from the vehicle to perform a safety pat down of the occupants of the car."

¶ 13    Counsel testified he and defendant discussed any possible strategy to suppress the drugs. Counsel testified he told defendant "that based on the evidence that was presented it would be a very difficult motion to win in reference to trying to suppress the evidence that was found at the stop." Counsel and defendant also discussed the violation of bond charge and what occurred in a conference counsel had with the trial judge on both cases. Counsel told defendant the results of that conference and advised defendant to plead guilty to the violation charge and to proceed with a bench trial on the possession charges. Counsel testified defendant told counsel that defendant wanted counsel to proceed in the way counsel suggested. At no time before trial did defendant express that he wanted to go a different way.

¶ 14     Defendant's trial counsel also testified he has read the case law about auto stops in Illinois. It was his "understanding of the law ** that if the police officers have a valid reason for a stop and a valid reason for pulling people out of the car they can pat down occupants of the vehicle for their own safety." Counsel testified the officer in this case saw a "furtive movement" in the vehicle. Counsel testified his understanding of the term "furtive movement" was, "once the vehicle is curbed, if there's what the police officer considers movement—suspicious movement between the passengers in the vehicle, he has the right to remove those occupants of the vehicle for further checking for his safety." Counsel knew and agreed that, according to defendant's postconviction attorney, "in furtive gesture cases in Illinois the courts look at—to determine whether the gestures or the movements are consistent with innocent activity as well." Counsel testified he discussed with his client making a challenge to whether or not the alleged movements in this case were furtive or not but counsel had no notes of that conversation. At the preliminary hearing in defendant's criminal case, the officer did not use the term "furtive gesture" but did describe what he saw. After the officer felt a hard object in defendant's pants, the officer asked defendant what the object was and defendant responded it was cocaine.

¶ 15     Defendant's postconviction counsel submitted into evidence an affidavit by postconviction counsel's investigator. The investigator averred that postconviction counsel interviewed defendant's trial attorney and during that interview defendant's trial attorney stated he told defendant there was not much he could do to challenge the possession and that because defendant had two cases before the judge he did not want to aggravate the judge with extraneous litigation.

¶ 16     Following the evidentiary hearing the trial court denied defendant's petition for postconviction relief.

¶ 17     This appeal followed.

¶ 18                                     ANALYSIS

¶ 19     The Post-Conviction Hearing Act (Act) provides a mechanism for individuals convicted of crimes to mount a collateral attack on their conviction or sentence by asserting that the conviction or sentence resulted from a substantial denial of their constitutional rights. *People v. Simms*, 2020 IL App (1st) 161067, ¶ 21. The Act creates a three-stage process for obtaining postconviction relief. *People v. Logan*, 2011 IL App (1st) 093582, ¶ 30. If a postconviction petition survives to the third stage, as here, the trial court holds an evidentiary hearing on the petition where fact-finding and credibility determinations are made. *Id.* The trial court's decision on a postconviction petition following a third-stage evidentiary hearing will not be reversed unless it is manifestly erroneous. *Id.*, citing *People v. Beaman*, 229 Ill. 2d 56 (2008). "The present case involves an appeal from the denial of defendant's postconviction petition following a third-stage evidentiary hearing. In denying the petition, the circuit court made findings of fact that trial *** counsel committed no ineffective assistance. Accordingly, we review whether the court's decision was manifestly erroneous." *Id*. ¶ 31, citing *Beaman*, 229 Ill. 2d at 72. "Manifest error is error that is 'clearly evident, plain, and indisputable.' [Citation.]" *Beaman*, 229 Ill. 2d at 73.

¶ 20     In this appeal defendant argues neither the circumstances surrounding the traffic stop nor the movements the officer described create a reasonable suspicion he was armed; therefore, filing a motion to suppress the evidence on the grounds the officer searched defendant without reasonable suspicion would have been meritorious and defendant's trial counsel was ineffective in failing to do so. Defendant also argues that his trial counsel's decision not to move to suppress the evidence was not a strategic decision because counsel made his choice "based on an

un-researched and incorrect legal analysis." Because the evidence seized from the allegedly unlawful search was the only evidence of defendant's guilt defendant argues the failure to move to suppress it prejudiced him.

¶ 21    "The Illinois Supreme Court has found that, to determine whether a defendant was denied his or her right to effective assistance of counsel, an appellate court must apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  [Citations.]  Under *Strickland*, a defendant must prove both (1) that his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and (2) that, absent these errors, there was a reasonable probability that his trial would have resulted in a different outcome."  *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 53.  To prevail on a claim of ineffective assistance of counsel,

>"a defendant must satisfy both prongs of the *Strickland* test.  [Citations.]
>That means that, if an ineffective-assistance claim can be disposed of because the
>defendant cannot satisfy one prong, we need not determine the remaining prong.
>
>* * *
>
>To establish the first prong, a defendant must overcome the strong
>presumption that the challenged action or inaction may have been the product of
>sound trial strategy.  [Citations.]  Matters of trial strategy are generally immune
>from claims of ineffective assistance of counsel.  [Citations.]"  *Id.*, ¶¶ 56-58.

¶ 22    "[E]ffective assistance of counsel refers to competent, not perfect, representation. [Citations.]  Since a defendant is entitled to reasonable, not perfect, representation, mistakes in strategy or in judgment do not, of themselves, render the representation incompetent.  [Citation.] A defendant must overcome the strong presumption that counsel's performance fell within a

wide range of reasonable professional assistance. [Citation.]" *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 95. "Hence, [m]istakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent. [Citation.] The only exception to this rule is when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing. [Citations.]" *People v. Madej*, 177 Ill. 2d 116, 149 (1997). "We recognize that a mistake as to the law can be a basis for finding that an attorney was ineffective. [Citation.]" *People v. Patterson*, 192 Ill. 2d 93, 121 (2000), see also *People v. Miller*, 346 Ill. App. 3d 972, 983 (2004) ("Trial counsel's decision not to reference the duffel bag at the evidentiary hearing was not a matter of judgment, discretion, or trial tactics. It was a mistake of law."). The "defendant bears the burden of proving that counsel was deficient in that the performance of his attorney fell outside the 'range of competence demanded of attorneys in criminal cases.' [Citations.]" *People v. Goodloe*, 263 Ill. App. 3d 1060, 1072 (1994).

¶ 23     The question with which we are faced is whether in this case defendant's trial attorney committed a tactical error—choosing to forego litigating what would ultimately be a frivolous motion to focus on securing a conviction on the less serious of the charged offenses—or if counsel was mistaken as to the law—that reaching toward one's waistband and appearing to secrete something just before police stop a vehicle in which defendant is a passenger, without more, can give rise to a reasonable suspicion the something may be a weapon as a matter of law. We note, additionally, that we should undertake this inquiry based on the law as it existed in 2006. "In recognition of the variety of factors that go into any determination of trial strategy *** claims of ineffective assistance of counsel must be judged on a circumstance-specific based, viewed not in hindsight, but from the time of counsel's conduct. [Citations.]" (Internal quotation marks omitted.) *People v. Othman*, 2020 IL App (1st) 150823-B, ¶ 72. We find

defendant has established, at best, a tactical error but definitely has failed to establish a misunderstanding of the law.

¶ 24    Defendant argues his trial attorney made a mistake as to the law.  Defendant argues plainly that "[a]ppellate court decisions applying this precedent make clear that movements like [defendant's] do not create such a reasonable suspicion."  Defendant then supports that assertion with examples of decisions from this court where there was more evidence that gave rise to a reasonable suspicion the defendant may have been armed (see *People v. Evans*, 2017 IL App (4th) 140672, ¶ 43 ("Taking *all the factors together*, it was objectively reasonable for officer Harrold to suspect defendant may have been armed with a weapon.  (Emphasis added.))) or allegedly analogous scenarios in which the court found police lacked a reasonable articulable suspicion a defendant was armed (see, *e.g.*, *People v. Davis*, 352 Ill. App. 3d 576, 582 (2004) ("Even when we consider all of the facts available to Officer Sheehan collectively, we cannot conclude that the frisk was proper.  The fact that defendant was stopped for a minor traffic offense, coupled with his behavior during the stop, simply does not create a reasonable belief that defendant was armed and dangerous.)).  Defendant's authorities and arguments are enlightening but ultimately unconvincing.

¶ 25    "[I]n the context of a stop of an automobile, where police have a reasonable suspicion based on specific and articulable facts to believe that a vehicle occupant may be armed and dangerous, they may conduct a protective search for weapons *** of the suspect's person." *People v. Sorenson*, 196 Ill. 2d 425, 440 (2001).  "In evaluating the validity of an officer's protective conduct under *Terry*, the touchstone of the analysis is the reasonableness under the circumstances of the particular governmental invasion of a citizen's personal security. [Citation.]"  *Id.* at 441, citing *Michigan v. Long*, 463 U.S. 1032, 1051 (1983).  Thus, despite their

era, defendant's authorities presenting alternative factual scenarios are at most instructive but are not authoritative on the issue. Regardless,

> "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

¶ 26   "While an objective standard is generally used, this evaluation is based upon the totality of the circumstances and therefore includes, as one factor, evidence of the officer's subjective feelings regarding his safety. [Citation.]" *People v. DeLuna*, 334 Ill. App. 3d 1, 10 (2002). The decision to seize an individual and to pat him or her down must not be "the product of a volatile or inventive imagination" nor be "undertaken simply as an act of harassment." *Terry*, 392 U.S. at 28. But we must also bear in mind that the officer must "make a quick decision as to how to protect himself *** from possible danger." *Id.* "The burden of proof rests with defendant to prove that the pat-down search was unlawful. [Citation.]" *DeLuna*, 334 Ill. App. 3d at 10.

¶ 27   In *People v. Brown*, 190 Ill. App. 3d 511 (1989), one of the cases defendant cited, after stopping a vehicle in response to the officer's lights and siren, the defendant, who was driving, "reached up toward the dashboard with his right hand and then down to the floor on the passenger's side." *Id.* at 513. A passenger in the vehicle testified the defendant "moved a radar detector from the dashboard to the floor of the car." *Id.* at 513-14. The State argued the defendant's movements as the officer approached the vehicle "would justify a reasonably

prudent officer in believing his safety was in danger, and that the vehicle's passenger may have had access to a weapon, thereby justifying the pat-down search of [the] defendant." *Id.* at 514-15. The *Brown* court disagreed, finding the officer "had no reasonable basis which he could articulate to conduct the search after ordering [the] defendant out of the car." *Id.* at 515. The court held that "[i]f vague movements within a traffic violator's vehicle are considered sufficient, without other facts suggesting possible danger to the officer, to conduct even a limited search of the violator's person, similar unwarranted police intrusions of this nature would surely be generated." *Brown*, 190 Ill. App. 3d at 515.

¶ 28    We, unlike the *Brown* court, do not consider defendant's movements "vague." We are guided by *People v. Moore*, 341 Ill. App. 3d 804 (2003), in which, after the officer stopped the car and was waiting in his squad car for a check of the defendant's driver's license, "he saw 'some motions going on in the front car, like they were trying to hide something in the car basically.' " *Moore*, 341 Ill. App. 3d at 806. The officer testified "he felt uneasy *** and that he was not sure if anyone had any weapons ***." *Id.* "Based on the defendant's nervous behavior and the motions inside the car indicating that the occupants were trying to hide something, [the officer] conducted a pat-down search of the defendant, in which the officer discovered nothing." *Id.* The officer requested permission to search the car, which was granted. The defendant filed a motion to dismiss which the trial court granted. *Id.* at 807. The trial court found "the case boiled down to whether [the officer's] explanation of furtive movements in the vehicle was a sufficient basis to justify detention of the vehicle." *Id.* The trial court found the officer's "observation of furtive movements was not explained with enough specificity since he could not articulate the specific movements inside the vehicle or who was moving. The trial court emphasized that [the officer] simply testified that he saw some type of movement."

¶ 29    The *Moore* court disagreed with the trial court's determination that "furtive movements inside the car were *not* enough to justify the *** search." (Emphasis added.) *Moore*, 341 Ill. App. 3d at 810. The court noted that "courts cannot reasonably demand scientific certainty from law enforcement officers where none exists. [Citation.] Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. [Citation.]" *Id.* at 810, citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). The court found that the officer's observations implied either the defendant or a passenger was moving something in an attempt to hide it and that "[s]imilar situations and explanations of furtive movements [had] been found sufficient to warrant further detention." *Id.* at 811, citing *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992).

¶ 30    In *Fryer* the Seventh Circuit found that "[t]he uncontroverted facts show[ed] that while patrolling a marginally safe neighborhood, in the wee hours of the morning, a veteran police officer observed a traffic violation. After signaling the car to pull over, the officer observed furtive movements between the driver and the passenger, as if they were passing something between them." *Fryer*, 974 F.2d at 819. The officer and his partner conducted searches of both the passenger area of the car and its occupants. *Id.* The *Fryer* court held "[t]hese are clearly the kind of specific, articulable facts that the standard contemplates and which warrant a search." *Fryer*, 974 F.2d at 819.

¶ 31    In this case, at the preliminary hearing Officer Filskov testified that at approximately 11:00 p.m. he stopped a vehicle for a traffic violation. The officer identified defendant as the front seat passenger. As Officer Filskov was pulling the vehicle over, he observed defendant and the rear seat passenger "at the same time push[] themselves up on the seat and *** reach[] down into their waistbands with their hands." He noticed the movement "as [he] was pulling the

vehicle over." Specifically, "[o]nce [he activated [his] lights to pull the vehicle over, as [he] was following the vehicle and the vehicle was starting to curb, that's when [he] saw [defendant] moving." Defendant and the passenger "literally pushed themselves up on the seat. You could see them both come up. Their heads went back. Their upper bodies came up and their hands went to their waistband area." Officer Filskov's partner asked defendant to step out of the vehicle and defendant complied. Officer Filskov testified he performed "a safety pat-down." Officer Filskov testified that once the vehicle was stopped the passengers exited the vehicle and "for safety purposes they were both placed into handcuffs." When asked if he then performed "a protective pat-down" the officer stated he first asked defendant if defendant had any weapons on him. Defendant responded no, and Officer Filskov patted him down. It was at that point in time he felt a hard object. Officer Filskov asked what it was and defendant responded it was cocaine.

¶ 32    We find that Officer's Filskov's concern for his and his fellow officers' safety was not "the product of a volatile or inventive imagination, or *** undertaken simply as an act of harassment." *Terry*, 392 U.S. at 28. In this case the passengers' conduct was not as innocuous as placing an object on the floor or in a seat pocket. *Cf. Brown*, 190 Ill. App. 3d at 515, *Smith*, 2015 IL App (1st) 131307, ¶ 36 ("In the instant case, the articulated basis for searching defendant's car was that Officer Perez observed defendant reach toward the rear of the passenger seat. Defendant was quiet and compliant. When asked why he asked defendant to step out of the vehicle, Officer Perez simply stated, "for officer safety," but offered no other specific or articulable facts to support his belief that he feared for his safety."). The passengers' conduct in this case is, however, a fact supporting a reasonable belief they were armed and/or that the officers should fear for their safety. To wit: both passengers fully raised their upper bodies and reached down into their waistbands—not a common area for the carrying of innocent objects but

a frequent repository of contraband including dangerous weapons. See, *e.g.*, *People v. Holland*, 356 Ill. App. 3d 150, 152 (2005) ("Officer Brian explained that in his eight years as an Aurora police officer, he remembered 10 incidents where people concealed weapons in the waistbands of their pants.")

¶ 33 Nor do Officer Filskov's actions suggest he was more concerned with a law enforcement objective than a threat to his safety. *Cf. Matthews*, 357 Ill. App. 3d at 1069 ("Other evidence on the *Terry* issue also supports inferences in [the] defendant's favor. *** When [the officer] observed [the defendant] lean forward (the conduct that allegedly justified a *Terry* search), he did not search the car at all. *** [The officer] continued his traffic stop routine *** rather than searching the car to abate the alleged threat to officer safety."). Here, the officer immediately ordered defendant to exit the vehicle, handcuffed him, and conducted a pat-down search for his own safety.

¶ 34 We find that in this case, based on Officer Filskov's observations, a reasonably prudent person would, under the circumstances, be warranted in believing his safety was in danger because defendant may have placed a weapon in his waistband. "[T]he record evidences the tempered act of a policeman who in the course of an investigation had to make a quick decision as to how to protect himself *** from possible danger, and took limited steps to do so." *Terry*, 392 U.S at 28. The limited pat-down of defendant was proper. Of course, "[i]f, while conducting a legitimate *Terry* search *** the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Long*, 463 U.S. at 1050.

¶ 35 Based on the foregoing, we find trial counsel did not have a misunderstanding of the law. Because counsel could reasonably conclude a motion to suppress evidence would not have been

successful in this case, we cannot say his chosen trial strategy was so unsound that counsel entirely failed to conduct any meaningful adversarial testing. *Madej*, 177 Ill. 2d at 149. Therefore, defendant failed to establish trial counsel's performance fell below an objective standard of reasonableness. Because defendant has failed to establish the deficient performance prong of his ineffective assistance of counsel claim, we hold the trial court properly denied defendant's postconviction petition.

¶ 36    We recognize and acknowledge defendant's attorney may have had an arguable position in this case. See *supra*, ¶ 28. Nonetheless, we do not find counsel's performance fell below an objective standard of reasonableness.

> "Whether or not a motion to quash a search warrant and suppress evidence should be filed in a criminal case is a matter of trial tactics and has little bearing on competency of counsel. [Citations.] A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. [Citation.] The decision of whether or not to file a motion to suppress is best left to trial counsel's discretion." *People v. Kornegay*, 2014 IL App (1st) 122573, ¶ 20.

¶ 37    We again note that the sixth amendment guarantees "competent, not perfect, representation." *Gunn*, 2020 IL App (1st) 170542, ¶ 95. "Since a defendant is entitled to reasonable, not perfect, representation, mistakes in strategy or in judgment do not, of themselves, render the representation incompetent." *Id.* Here, defendant's trial attorney made a judgment call that a motion to suppress would fail and, the record suggests, detract from counsel's ability to secure a conviction on a lesser charge with a shorter sentencing range. "Such a choice of

tactics does not demonstrate ineffective assistance of counsel." *People v. Foster*, 82 Ill. App. 3d 634, 638 (1980), citing *People v. Breitweiser*, 44 Ill. App. 3d 284 (1976).

¶ 38   The fact defendant's trial attorney conducted no new additional research does not alter our conclusion. "In *Strickland v. Washington*, the Court stated that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' *Strickland*, (1984), 466 U.S. at 690-91." *People v. Caballero*, 126 Ill. 2d 248, 290 (1989) (Ryan J., specially concurring in part).  Based on our research, counsel's strategic choice in this case was supported by reasonable professional judgment of the law that existed at the time.  Contrary to defendant's assertion on appeal, there is no bright line rule that conduct like defendant's cannot give rise to a reasonable, articulable suspicion a person is armed.  Rather, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Moore*, 341 Ill. App. 3d at 810.  Thus, we do not find that counsel's choice resulted from an objective mistake of law. *Patterson*, 192 Ill. 2d at 121, *Miller*, 346 Ill. App. 3d at 983.  If at best the issue was disputable, the trial court's judgment that defendant's trial counsel's performance was not deficient in making the strategic choice not to file a difficult-if-not-impossible-to-win motion to suppress does not evidence an "error that is 'clearly evident, plain, and indisputable.' [Citation.]" *Beaman*, 229 Ill. 2d at 73.

¶ 39   Accordingly, the trial court's judgment is affirmed.

¶ 40                                    CONCLUSION

¶ 41   For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 42   Affirmed.